

FILED by ___ D.C.
ELECTRONIC

**May. 1, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION

| | |
|---|---|
| THE ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA EAST COAST CHAPTER as an Organization and Representative of its Members; THE SOUTH FLORIDA ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC. as an Organization and Representative of its Members, THE FLORIDA CRANE OWNERS COUNCIL INC. as an Organization and Representative of its Members, THE CONSTRUCTION ASSOCIATION OF SOUTH FLORIDA as an Organization and Representative of its Members. | CIVIL ACTION NO. _____ <br><br> **08-21274-CIV-UNGARO/SIMONTON** |
| Plaintiffs, | |
| v. | |
| MIAMI-DADE COUNTY, a political subdivision of the State of Florida, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Associated Builders and Contractors Florida East Coast Chapter, Inc.

("ABC-FEC"), the South Florida Associated General Contractors of America, Inc.

("SFAGC"), the Florida Crane Owners Council ("FCOC") and the Construction

Association of South Florida ("CASF"), hereby file their Complaint against Defendant

Miami-Dade County (the "County"), respectfully showing this Honorable Court as

follows:

## PARTIES

1.    The County is a political subdivision of the State of Florida.

2.    The ABC-FEC is a non-profit corporation incorporated under the laws of the State of Florida with its principal place of business in Coconut Creek, Florida.

3.    The ABC-FEC is a trade association committed to the promotion and strengthening of the interests of its members working for public and private owners in the construction industry. The ABC-FEC is a local chapter of the Associated Builders and Contractors and represents the interests of approximately 970 commercial, industrial and institutional merit shop contractors, suppliers and industry professionals in the south Florida area. The ABC-FEC is actively involved in promoting and opposing legislation and regulation at the state and local level for the benefit of its members. Many of the estimated 200,000 employees of ABC-FEC members conduct work on projects in Miami-Dade County and are impacted adversely by the Crane Ordinance.

4.    Many of the ABC-FEC's members are currently, actively involved in bidding for and performing work in the County. If the Crane Ordinance is enforced, members of the ABC-FEC will be unable to meet the regulations imposed by the Crane Ordinance and therefore unable to conduct business in the County. The Declaration of the ABC-FEC is Exhibit "A".

2

5.      The SFAGC is a non-profit corporation incorporated under the laws of the State of Florida with its principal place of business in Sunrise, Florida.

6.      The SFAGC is the oldest contractor association in South Florida. The SFAGC is a trade association whose members include many of the top general contractors, construction managers, specialty contractors, and service and supplier companies supporting Florida's commercial construction industry. The SFAGC's contractor members are major providers of both private and public construction services. The SFAGC is a vocal advocate of its members' interests, which it seeks to protect and advance through participation in the development, maintenance and enforcement of Florida legislation affecting and governing the construction industry.

7.      Many of the SFAGC's members are currently, actively involved in bidding for and performing work in the County. Under the Crane Ordinance, General Contractor members of SFAGC would be required to apply for permits for the use of cranes, even though cranes are supplied by a trade contractor. There are no applications available for this process and general contractors will not be able to comply with the terms of the Crane Ordinance. If the Crane Ordinance is enforced, SFACG's members will be unable to meet the regulations imposed by the Crane Ordinance and therefore unable to conduct business in the County. The Declaration of the SFAGC is Exhibit "B".

8.      The FCOC is a non-profit corporation incorporated under the laws of the State of Florida with its principal place of business in Orlando, Florida.

9.     The FCOC's membership is comprised of approximately 35 companies providing cranes and crane services to the construction industry in Florida. The FCOC is dedicated to addressing the issues and concerns of Florida crane owners and associated industries, in a unified effort to develop and monitor laws, regulations and standards for the safe and efficient future of the crane industry in the state of Florida

10.    Many of the FCOC's members are currently, actively involved in bidding for and performing work in the County. If the Crane Ordinance is enforced, members of the FCOC will be unable to meet the regulations imposed by the Crane Ordinance and therefore unable to conduct business in the County. The Declaration of the FCOC is Exhibit "C".

11.    The CASF is a non-profit corporation incorporated under the laws of the State of Florida with its principal place of business in Ft. Lauderdale, Florida.

12.    The CASF is a trade association which was created to serve and develop the South Florida construction industry and to improve the interests and welfare of its members within the public interest. The CASF continually monitors county government and state legislation activities to ascertain when issues affecting the construction business in South Florida emerge. The CASF represents its membership with county and state government officials and is instrumental in the development or finalization of ordinances, regulations and laws which affect the construction industry.

4

13.     Many of the CASF' members are currently, actively involved in bidding for and performing work in the County. If the Crane Ordinance is enforced, members of the CASF will be unable to meet the regulations imposed by the Crane Ordinance and therefore unable to conduct business in the County. The Declaration of the CASF is Exhibit "D".

14.     The Plaintiffs have satisfied all conditions precedent to the bringing of this action and to recovery of all other relief sought in this Complaint.

### JURISDICTION AND VENUE

15.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' cause of action for a claim arising under the Constitution of the United States and 42 U.S.C. § 1983.

16.     This Court has personal jurisdiction over the County, which is located in the Southern District of Florida.

17.     Venue is proper in the Miami-Dade Division of the Southern District of Florida under 28 U.S.C. § 1391(b) and Local Rule 3.1 in that the County is subject to personal jurisdiction within the district and the events which give rise to the action occurred within the Miami-Dade Division of the Southern District of Florida.

### GENERAL ALLEGATIONS

18.     On March 28, 2008, the County enacted an ordinance entitled "Ordinance relating to the safety of cranes and other hoisting equipment; providing definitions;

5

providing standards for the manufacture and installation; providing for education and certification of operators; establishing standards for hurricane preparedness; providing for enforcement; creating Chapter 8E of the Code; providing severability, inclusion in the code, and an effective date" (hereafter the "Crane Ordinance"). The Crane Ordinance is Exhibit "E".

19.     The Crane Ordinance purports to establish a "uniform standard for the construction, installation, operation and use of Hoisting Equipment, for the inspection and certification of Hoisting Equipment, and for the education and certification of Hoisting Equipment operators" in the County.

20.     The Crane Ordinance applies where there are differences between the Crane Ordinance and "referenced codes and standards".

21.     The Crane Ordinance requires cranes operating in the County to comply with "the mandatory rules contained within the applicable ASME B30 standard of the American Society of Mechanical Engineers made applicable to construction Tower Cranes (ASME B30.3)". This is standard for construction Tower Cranes.

22.     The Crane Ordinance requires cranes operating in the County to comply with "the most current standards of the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA) applicable to cranes including 29 C.F.R. 1926.550."

23.     The Crane Ordinance requires cranes operating in the County to comply with "the wind load standards contained within SEI/ASCE-7 for High Velocity Hurricane

6

Zones as applied to the crane base foundation, the tie-ins to the building, the free-standing height and height above the tie-in." SEI/ASCE-7 was created to provide wind load standards for permanent structures.

24.   Construction Tower Cranes are not permanent structures.

25.   The Crane Ordinance confers discretionary authority upon the County's Building Officials to determine if a crane should be classified as a "temporary structure" or a "permanent structure". The Crane Ordinance states that "[i]n applying the provisions of SEI/ASCE-7 for temporary installations, the design velocity reduction factors contained in SEI/ASCE 37-02 may be considered in factoring the wind speed at the discretion of the Building Official. The decision shall be made by the Building Official on a site-by-site basis. Factors to be considered include, but are not limited to, proximity to other structures, density, swing radius of the crane, hoist location and other safety measures."

26.   Tower Cranes classified as temporary structures utilize SEI/ASCE 37-02 to reduce the design forces of the crane.

27.   Those Tower Cranes deemed to be permanent Tower Crane structures must comply with SEI/ASCE 7 and are not afforded the reduction in wind velocity permitted in SEI/ASCE 37-02. Many structures will not be possible to construct if the Tower Cranes are required to comply with SEI/ASCE 7 alone.

28.     If a crane is arbitrarily classified, in the discretion of the County Building Official, as a temporary structure, the design wind forces are reduced from those required of a permanent structure.  The arbitrary decision by the County Building Official will determine whether the Plaintiffs' members can operate in the County.

29.     There are no cranes available in the United States that fulfill the requirements of the Crane Ordinance if Tower Cranes are required to comply with SEI/ASCE 7 alone.  If the Crane Ordinance is enforced, the use of tower cranes in the County would effectively be abolished.

30.     The Crane Ordinance requires that the County use a Special Hoisting Equipment Inspector for any construction that involves the use of hoisting equipment. No such inspector currently exists in the County.  The Plaintiffs have no means by which to have equipment which falls under this provision inspected.

31.     If, in the discretion of the Special Hoisting Equipment Inspector, it is determined that a violation has occurred, the County Building Official may suspend or revoke the project's building permit.

32.     The Crane Ordinance also requires certification for crane operators.  The Office of Building Code Compliance of the County is the certifying entity.

33.     There is no process in place for persons in the Office of Building Code Compliance to be credentialed to be recognized as a certifier.

### COUNT I -Violation of OSHA

8

34.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35.     Pursuant to its exclusive power over matters of occupational health and safety, the federal government has established a comprehensive system of laws, regulations, procedures, and administrative agencies to regulate occupational safety and health.

36.     Congress created the Occupational Safety and Health Act ("OSHA") upon a finding that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." 29 U.S.C. § 651(a).

37.     Congress explicitly stated that the Secretary of Labor was responsible for setting "mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions." 29 U.S.C. § 651(b)(3).

38.     OSHA provides that "the Act is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which a Federal standard has been issued under section 6 of the Act." 29 CFR 1902.1(a).

39.     Congress stated that "[a]ny State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and

9

health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under 29 U.S.C. § 655 *shall* submit a State plan for the development of such standards and their enforcement." 29 U.S.C. § 667 (emphasis added).

40.     The Crane Ordinance requires that "[w]here differences occur between provisions of [the Crane Ordinance] and referenced codes and standards, the provisions of [the Crane Ordinance] shall apply."

41.     Only the Secretary of Labor can approve a plan submitted by a State that attempts to adhere or supersede the requirements of OSHA.

42.     The Crane Ordinance is in direct violation of the express preemption provisions of OSHA.

        WHEREFORE the Plaintiffs seek and are entitled to, a declaratory judgment that the Crane Ordinance located at Miami-Dade Code Section 8E is in direct violation of the express preemption provisions of OSHA.

**COUNT II - Violation of the Supremacy Clause**
**(Article VI, Section 2, of the United States Constitution; 42 U.S.C. § 1983)**

43.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     Article VI, Section 2, of the United States Constitution, known as the Supremacy Clause, provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the

10

Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution of Laws of any State to the Contrary notwithstanding."

45.     The Supremacy Clause mandates that federal law preempts any state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.

46.     In 1979, the Department of Labor legislated Safety and Health Regulations for Construction.  29 C.F.R. § 1926.  The Plaintiffs' member businesses are subject to these OSHA requirements.

47.     At C.F.R.T. 29, Subt. B, Ch. XVII, Pt. 1926, Subpt. N, OSHA sets forth the standards for "Cranes, Derricks, Hoists, Elevators, and Conveyors".  These standards were promulgated under 29 U.S.C. 655.

48.     Pursuant to 29 U.S.C. § 667 titled State jurisdiction and plans, State standards for occupational health and safety may be promulgated in the "absence of applicable Federal standards".  A State agency may assert jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under 29 U.S.C. § 655.

49.     Pursuant to 29 C.F.R. § 1902.3(c)(2), the State plan shall not include standards for products distributed or used in interstate commerce which are different from Federal

11

standards for such products unless such standards are required by compelling local conditions and do not unduly burden interstate commerce.

50.     Pursuant to 29 C.F.R. § 1902.2, the state plan may contain one or more subparts of 29 C.F.R. Part 1910, which includes Derricks & Cranes, if the Secretary of Labor determines that the plan is administratively practicable and that it doesn't conflict with the purpose of the Act.

51.     After the Secretary approves a State plan, he may, but shall not be required to, exercise his authority under 29 U.S.C. §§ 657, 658, 659, 662, and 666 with respect to the state standards promulgated under 29 U.S.C. § 655, until he determines, on the basis of actual operations under the State plan, that the required criteria are being applied. The Secretary shall not make such determination for at least three years after the plan's approval. Upon making this determination the standards promulgated under 29 U.S.C. § 655, shall not apply with respect to any occupational safety or health issues covered under the plan.

52.     The County has not obtained the requisite approval of the Secretary of Labor to enact the Crane Ordinance.

53.     The Crane Ordinance regulates the same activities as 29 C.F.R.  § 1926 and is in direct violation of the express preemption provisions of OSHA.  Unless and until the Secretary approves the Crane Ordinance, the regulations for "Cranes, Derricks, Hoists, Elevators, and Conveyors" located at 29 C.F.R. § 1926.550 apply.

54.     The Crane Ordinance is preempted by the federal regulations located at 29 C.F.R.

§ 1926.550.

55.     Plaintiffs' member businesses seeking to do work in the County are being, or are

likely to be, imminently and irreparably harmed by the County's requirements for

cranes.

WHEREFORE the Plaintiffs seek and are entitled to, a declaratory judgment that

the Crane Ordinance located at Miami-Dade Code Section 8E violates Article VI, Section

2, of the United States Constitution and is preempted by 29 C.F.R. § 1926.550.

### COUNT III – Violation of Procedural Due Process
**(The Due Process Clause of the Fourteenth Amendment; 42 U.S.C. § 1983**
**and Sections 2 and 9 of the Florida Constitution (1968))**

56.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 55 of this

Complaint as if fully set forth herein.

57.     The Due Process Clause of the Fourteenth Amendment to the United States

Constitution guarantees certain fundamental rights, including the right to a meaningful

hearing prior to the deprivation of liberty or property.

58.     Article I Section 9 of the Florida Constitution similarly provides that "No person

shall be deprived of life, liberty or property without due process of law".

59.     The right to conduct business and earn a profit is a property interest protected by

the Fourteenth Amendment and Article I Section 2 of the Florida Constitution.

13

60.     Under federal and state requirements, crane operators and manufacturers are able to comply with the standards promulgated by OSHA and the Florida Building Code.

61.     Sections 8E-4(d) and 8E-6(d) of the Crane Ordinance place unreasonable requirements on the Plaintiffs' member businesses and other persons similarly situated. It is impossible for the Plaintiffs' member businesses, or others similarly situated, to comply with the Crane Ordinance's standards. Sections 8E-4(d) and 8E-6(d) of the Crane Ordinance are unconstitutionally onerous and unreasonable.

62.     The enforcement of Sections 8E-4(d) and 8E-6(d) of the Crane Ordinance will result in an irreparable injury to the crane industry in Miami-Dade County.

63.     The Plaintiffs' member businesses are entitled to Due Process of law prior to the taking of their businesses by an act of a state agency.

64.     The County has enacted an ordinance that causes the destruction of the Plaintiffs' member businesses' ability to earn a profit and conduct business in the County.

65.     Plaintiffs' member businesses have been denied Due Process by the County

66.     Plaintiffs' member businesses seeking to do business in the County are irreparably harmed by the County's restriction of their ability to do business in the County.

        WHEREFORE the Plaintiffs seek and are entitled to, a declaratory judgment that the Crane Ordinance located at Miami-Dade Code Section 8E violates the Due Process

14

Clause of the Fourteenth Amendment and Article I Sections 2 and 9, Florida

Constitution (1968).  The Crane Ordinance is therefore void, unenforceable and without

effect.

**COUNT IV – Violation of Substantive Due Process**
**(The Due Process Clause of the Fourteenth Amendment; 42 U.S.C. § 1983;**
**and Section 2 of the Florida Constitution (1968))**

67.      Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 66 of this

Complaint as if fully set forth herein.

68.      Article I Section 2 of the Florida Constitution provides that "All natural persons,

female and male alike, are equal before the law and have inalienable rights, among

which are the right to enjoy and defend life and liberty, to pursue happiness, to be

rewarded for industry, and to acquire, possess and protect property…"

69.      The Crane Ordinance allows for the arbitrary and capricious enforcement of the

wind velocity provisions.  This substantial discretion granted to the County Building

Officials under the Crane Ordinance carries an inherent risk of arbitrary enforcement.

70.      The Crane Ordinance violates and interferes with the liberty and property rights

of the member plaintiffs under the Due Process Clause of the Fourteenth Amendment

and Sections 2 of the Florida Constitution by imposing severe civil sanctions and/or

forfeitures for the commission of purported civil offenses which can be arbitrarily and

discriminatorily enforced.

WHEREFORE the Plaintiffs seek and are entitled to, a declaratory judgment that the Crane Ordinance located at Miami-Dade Code Section 8E violates the Due Process Clause of the Fourteenth Amendment and Sections 2 of the Florida Constitution and is void, unenforceable and without effect.

### COUNT V –Commerce Clause
### (United States Constitution, Art. I, § 8, cl. 3.)

71.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.     The Commerce Clause provides that "Congress shall have Power to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., Art. I, § 8, cl. 3. The Commerce Clause implicitly restricts the states' power to burden interstate commerce. The Commerce Clause thus denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.

73.     Pursuant to its exclusive power over matters concerning the Commerce Clause, Congress authorized "the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions under this chapter." 29 U.S.C. § 651(c).

74.     These federal safety regulations were created "through the exercise of [Congress'] powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare…" 29 U.S.C. § 651(b).

75.     The power to regulate occupational health and safety is an exclusive federal power that is inherent in the nation's sovereignty and derived from the Constitution's grant to the federal government of that power under the Commerce Clause.

76.     Under the Dormant Commerce Clause, the County cannot enact a regulation which burdens interstate commerce where the burden imposed on such commerce is *clearly excessive* in relation to the putative local benefits.

77.     The Crane Ordinance unduly burdens interstate commerce in violation of the Dormant Commerce Clause of the United States Constitution.  The burden which the Crane Ordinance imposes on interstate commerce is clearly excessive in relation to the putative local benefits.

78.     The standards set forth in Sections 8E-4(d) and 8E-6(d) of the Crane Ordinance require the Plaintiffs' member businesses to conform to guidelines that no crane supplier in the County and the United States can meet.

79.     If the Crane Ordinance is enforced, future construction in the County requiring the use of Tower Cranes will effectively cease.  The Plaintiffs will be unable to obtain the equipment necessary to meet the Crane Ordinance regulations.

WHEREFORE the Plaintiffs' seek and are entitled to, a declaratory judgment that the Crane Ordinance located at Miami-Dade Code Section 8E violates the Dormant Commerce Clause of the United States Constitution and is void, unenforceable and without effect.

<b><u>COUNT VI - Preliminary and Permanent Injunctive Relief</u></b>

80.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.   The Plaintiffs have a substantial likelihood of succeeding on the merits of their claims for the reasons alleged in Counts I through V above.

82.   The Plaintiffs will suffer irreparable injury, loss and damage for which they have no  adequate remedy at law if enforcement of the Crane Ordinance is not immediately enjoined until such time as the Court can determine the merits of this action and enter a permanent injunction should Plaintiffs' prevail.

83.   Absent entry of a preliminary and permanent injunction, the Plaintiffs will be subject to severe penalties for failure to comply with a void ordinance.  The Crane Ordinance is impossible for the Plaintiffs' members to comply with.

84.   Absent entry of a preliminary and permanent injunction, the Plaintiffs will be forced to cease all future construction in the County which requires the use of Tower Cranes.

18

85.    There is minimal harm to the County should this Court grant a preliminary and permanent injunction.  The public interest in continuing construction in the County supports the grant of a preliminary and permanent injunction.  In addition, the public interest will not be harmed as the OSHA standards regulating cranes for the safety of workers and the public will remain in place.

WHEREFORE for all of the foregoing reasons, Plaintiffs respectfully request that this Court enter judgment against Miami-Dade County for the following:

a)  A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the Crane Ordinance located at Miami-Dade County Ordinance, Section 8E is unlawful, unconstitutional, and invalid;

b)  An injunction pursuant to F.R.C.P. 65 prohibiting Miami-Dade County from enforcing the Crane Ordinance located at Miami-Dade County Ordinance, Section 8E;

c)  An order awarding Plaintiffs the cost incurred in this litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

d)  Such other relief as the Court deems equitable, just, and proper.

- Signature to follow on next page -

Respectfully submitted,

**SMITH, CURRIE & HANCOCK, LLP**

Brian A. Wolf, Esq. (983683)
Maura K. Anderson, Esq. (19082)
bawolf@smithcurrie.com
mkanderson@smithcurrie.com
Smith, Currie & Hancock LLP
One East Broward Blvd.
Suite 620
Ft. Lauderdale, FL 33301
Phone:  (954) 761-8700
Fax:  (954) 524-6927


Attorneys for the Associated Builders and Contractors
Florida East Coast Chapter, Inc., South Florida
Associated General Contractors of America, Inc., the
Florida Crane Owners Council, Inc. and the
Construction Association of South Florida

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA EAST COAST CHAPTER, INC. as an Organization And Representative of its Members; THE SOUTH FLORIDA ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC. as an Organization and Representative of its Members, THE FLORIDA CRANE OWNERS COUNCIL INC. as an Organization and Representative of its Members, THE CONSTRUCTION ASSOCIATION OF SOUTH FLORIDA as an Organization and Representative of its Members. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MIAMI-DADE COUNTY, a political subdivision of the State of Florida, | ) ) ) |
| Defendant. | ) ) |

CIVIL ACTION NO. ___

## DECLARATION OF ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA EAST COAST CHAPTER, INC.

I, Danny J Shaw declare as follows:



tablas' EXHIBIT A

1.      I am President and CEO of the Associated Builders and Contractors Florida East Coast Chapter, Inc. ("ABC-FEC").

2.      The ABC-FEC is a non-profit corporation incorporated under the laws of the State of Florida with its principal place of business in Coconut Creek, Florida.

3.      The ABC-FEC is a trade association committed to the promotion and strengthening of the interests of its members working for public and private owners in the construction industry.  The ABC-FEC is a local chapter of the Associated Builders and Contractors, Inc. and represents the interests of over 977 commercial, industrial and institutional merit shop contractors, suppliers and industry professionals in the south Florida area. The ABC-FEC is actively involved in promoting and opposing legislation and regulation at the state and local level for the benefit of its members.

4.      As President and CEO of the ABC-FEC, I receive reports from our members concerning state, county and municipal legislative issues affecting their work.

- 2 -

5.     On March 28, 2008, Miami-Dade County enacted an ordinance entitled "Ordinance relating to the safety of cranes and other hoisting equipment; providing definitions; providing standards for the manufacture and installation; providing for education and certification of operators; establishing standards for hurricane preparedness; providing for enforcement; creating Chapter 8E of the Code; providing severability, inclusion in the code, and an effective date" (hereafter the "Crane Ordinance"). Members of the ABC-FEC notified me of the damaging effects the Crane Ordinance is expected to have on their businesses.

6.     Many of the ABC-FEC's members are currently, actively involved in bidding for and performing work in Miami-Dade County. These members are being adversely affected by the Crane Ordinance.

7.     Compliance with the requirements imposed by the Crane Ordinance cannot be achieved by members of the ABC-FEC. Indeed, upon information and belief, there are no cranes in the United States which can comply with the Crane Ordinance. As a result, many members of the ABC-FEC will be precluded from working in Miami-Dade County.

- 3 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of April 2008.

_____
Danny J Shaw, President and CEO

- 4 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION

THE ASSOCIATED BUILDERS AND )
CONTRACTORS FLORIDA EAST COAST )
CHAPTER, INC. as an Organization and )
Representative of its Members; )
THE SOUTH FLORIDA ASSOCIATED )
GENERAL CONTRACTORS OF AMERICA, )
INC. as an Organization and )
Representative of its Members, THE )
FLORIDA CRANE OWNERS COUNCIL INC. )   CIVIL ACTION NO. ___
as an Organization and Representative )
of its Members, THE CONSTRUCTION )
ASSOCIATION OF SOUTH FLORIDA as an )
Organization and Representative of )
its Members. )
 )
    Plaintiffs, )
 )
    v. )
 )
MIAMI-DADE COUNTY, a political )
subdivision of the State of Florida, )
 )
    Defendant. )

## DECLARATION OF THE SOUTH FLORIDA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA

I, Leonard D. Mills declare as follows:



EXHIBIT
B

1.     I am Executive Vice President/CEO of the South Florida Associated General Contractors of America, Inc. ("SFAGC").

2.     The SFAGC is a non-profit corporation incorporated under the laws of the State of Florida with its principal place of business in Sunrise, Florida.

3.     The SFAGC is the oldest contractor association in South Florida. The SFAGC is a trade association whose members include many of the top general contractors, construction managers, specialty contractors, and service and supplier companies supporting Florida's commercial construction industry.  The SFAGC's contractor members are major providers of both private and public construction services.  The SFAGC is a vocal advocate of its members' interests, which it seeks to protect and advance through participation in the development, maintenance and enforcement of Florida legislation affecting and governing the construction industry.

4.     As Executive Vice President/CEO of the SFAGC, I receive reports from our members concerning state, county and municipal legislative issues affecting their work.

- 2 -

5.    On March 28, 2008, the County enacted an ordinance entitled "Ordinance relating to the safety of cranes and other hoisting equipment; providing definitions; providing standards for the manufacture and installation; providing for education and certification of operators; establishing standards for hurricane preparedness; providing for enforcement; creating Chapter 8E of the Code; providing severability, inclusion in the code, and an effective date" (hereafter the "Crane Ordinance"). Members of the SFAGC notified me of the damaging effects the Crane Ordinance is expected to have on their businesses

3.    Many of the SFAGC's members are currently, actively involved in bidding for and performing work in Miami-Dade County.  These members are being adversely affected by the Crane Ordinance.

4.    Under the Crane Ordinance, General Contractor members of SFAGC would be required to apply for permits for the use of cranes, even though cranes are supplied by a trade contractor.  There are no applications available for this process and general contractors will not be able to comply with the terms of the Crane Ordinance.  If the Crane Ordinance is enforced, SFACG's members will be unable to meet the regulations imposed by the

- 3 -

Crane Ordinance and therefore unable to conduct business in the Miami-Dade County.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of April 2008.

Leonard D. Mills

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION

THE ASSOCIATED BUILDERS AND            )
CONTRACTORS FLORIDA EAST COAST         )
CHAPTER, INC. as an Organization and   )
Representative of its Members;         )
THE SOUTH FLORIDA ASSOCIATED           )
GENERAL CONTRACTORS OF AMERICA,        )
INC. as an Organization and            )
Representative of its Members, THE      )
FLORIDA CRANE OWNERS COUNCIL INC.      )   CIVIL ACTION NO. ___
as an Organization and Representative  )
of its Members, THE CONSTRUCTION       )
ASSOCIATION OF SOUTH FLORIDA as an     )
Organization and Representative of     )
its Members.                           )
                                       )
    Plaintiffs,      )
                                       )
    v.                )
                                       )
MIAMI-DADE COUNTY, a political         )
subdivision of the State of Florida,    )
                                       )
    Defendant.        )

## DECLARATION OF THE FLORIDA CRANE OWNERS COUNCIL, INC.

I, Bruce Whitten declare as follows:

1.    I am the Chairman of the Florida Crane Owners Council

("FCOC").



**EXHIBIT**

C

2.     The FCOC is a non-profit trade organization organized and existing under the laws of the State of Florida with its principal place of business in Orlando, Florida.

3.     The FCOC's membership is comprised of approximately 35 companies providing cranes and crane services to the construction industry in Florida.  The FCOC is dedicated to addressing the issues and concerns of Florida crane owners and associated industries, in a unified effort to develop and monitor laws, regulations and standards for the safe and efficient future of the crane industry in the state of Florida

4.     As Chairman of the FCOC, I receive reports from our contractor members concerning state, county and municipal legislative issues affecting their work.

5.     On March 28, 2008, Miami-Dade County enacted an ordinance entitled "Ordinance relating to the safety of cranes and other hoisting equipment; providing definitions; providing standards for the manufacture and installation; providing for education and certification of operators; establishing standards for hurricane preparedness; providing for enforcement; creating Chapter 8E of the Code; providing severability,

- 2 -

inclusion in the code, and an effective date" (hereafter the "Crane Ordinance").  Members of the FCOC notified me of the damaging effects of the Crane Ordinance is expected to have on their businesses.

6.      Many of the FCOC's members are currently, actively involved in bidding for and performing work in Miami-Dade County.  These members are being adversely affected by the Crane Ordinance.

7.      Compliance with the requirements imposed by the Crane Ordinance cannot be achieved by members of the FCOC.  Indeed, upon information and belief, there are no cranes in the United States which can comply with the Crane Ordinance.  If the Crane Ordinance is enforced, members of the FCOC will be unable to conduct business in Miami-Dade County.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___1___ day of ~~April~~ MAY 2008.

_____
[Name]

- 3 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION

| | |
|---|---|
| THE ASSOCIATED BUILDERS AND CONTRACTORS FLORIDA EAST COAST CHAPTER, INC. as an Organization and Representative of its Members; THE SOUTH FLORIDA ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC. as an Organization and Representative of its Members, THE FLORIDA CRANE OWNERS COUNCIL INC. as an Organization and Representative of its Members, THE CONSTRUCTION ASSOCIATION OF SOUTH FLORIDA as an Organization and Representative of its Members. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. _____ |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| MIAMI-DADE COUNTY, a political subdivision of the State of Florida, | ) ) ) |
| Defendant. | ) ) |

## DECLARATION OF THE CONSTRUCTION ASSOCIATION OF SOUTH FLORIDA

I, John Siegle, declare as follows:

1.    I am the Executive Vice president of the Contractors Association of

South Florida ("CASF").

2.    The CASF is a non-profit organization organized and existing

under the laws of the State of Florida with its principal place of business located

at Pompano Beach, Florida.



3.      The CASF is an industry association which was created to serve and develop the South Florida construction industry and to improve the interests and welfare of its members within the public interest.  The CASF continually monitors county government and state legislation activities to ascertain when issues affecting the construction business in South Florida emerge.  The CASF represents its membership with county and state government officials and is instrumental in the development or finalization of ordinances, regulations and laws which affect the construction industry.

4.      As Executive Vice President of the CASF, I receive reports from our contractor members concerning state, county and municipal legislative issues affecting their work.

5.      On March 28, 2008, the County enacted an ordinance entitled "Ordinance relating to the safety of cranes and other hoisting equipment; providing definitions; providing standards for the manufacture and installation; providing for education and certification of operators; establishing standards for hurricane preparedness; providing for enforcement; creating Chapter 8E of the Code; providing severability, inclusion in the code, and an effective date" (hereafter the "Crane Ordinance").  Members of the CASF notified me of the damaging effects of the Crane Ordinance is expected to have on their businesses

6.      Many of the CASF' members are currently, actively involved in bidding for and performing work in Miami-Dade County.  Compliance with the requirements imposed by the Crane Ordinance cannot be achieved by members

of the CASF.  Indeed, upon information and belief, there are no cranes in the United States which can comply with the Crane Ordinance.

7.  If the Crane Ordinance is enforced, members of the CASF will be unable to conduct their businesses in Miami-Dade County.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __30th__ day of April 2008.

John C. Siegle

# MEMORANDUM

Agenda Item No.  7(A)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairman Bruno A. Barreiro and Members, Board of County Commissioners | **DATE:** | March 18, 2008 |
| **FROM:** | Abigail Price-Williams Acting County Attorney | **SUBJECT:** | Ordinance relating to the safety of cranes and other hoisting equipment |

The accompanying ordinance was prepared and placed on the agenda at the request of Commissioner Audrey M. Edmonson.

Abigail Price-Williams
Acting County Attorney

APW/bw

EXHIBIT
E

# Memorandum 

**Date:** March 18, 2008

**To:** Honorable Chairman Bruno A. Barreiro
and Members, Board of County Commissioners

**From:** George M. Burgess
County Manager

**Subject:** Ordinance relating to the safety of cranes and other hoisting equipment

---

The ordinance relating to the safety of cranes and other hoisting equipment will not have a fiscal impact to Miami-Dade County. The enforcement and certifications required in this ordinance will be done through the use of existing resources.

Alex Munoz
Assistant County Manager

fis00408

2



# MEMORANDUM
### (Revised)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairman Bruno A. Barreiro and Members, Board of County Commissioners | **DATE:** | March 18, 2008 |
| **FROM:** | R. A. Cuevas, Jr. County Attorney | **SUBJECT:** | Agenda Item No. 7(A) |

Please note any items checked.

_____ "4-Day Rule" ("3-Day Rule" for committees) applicable if raised

_____ 6 weeks required between first reading and public hearing

_____ 4 weeks notification to municipal officials required prior to public hearing

_____ Decreases revenues or increases expenditures without balancing budget

_____ Budget required

_____ Statement of fiscal impact required

_____ Bid waiver requiring County Manager's written recommendation

_____ Ordinance creating a new board requires detailed County Manager's report for public hearing

_____ Housekeeping item (no policy decision required)

_____ No committee review

3

Approved _____ Mayor          Agenda Item No.  7(A)
Veto        _____                    03-18-08
Override    _____

ORDINANCE NO.   _____

ORDINANCE RELATING TO THE SAFETY OF CRANES
AND OTHER HOISTING EQUIPMENT; PROVIDING
DEFINITIONS; PROVIDING STANDARDS FOR
MANUFACTURE AND INSTALLATION; PROVIDING FOR
EDUCATION AND CERTIFICATION OF OPERATORS;
ESTABLISHING STANDARDS FOR HURRICANE
PREPAREDNESS; PROVIDING FOR ENFORCEMENT;
CREATING CHAPTER 8E OF THE CODE; PROVIDING
SEVERABILITY, INCLUSION IN THE CODE, AND AN
EFFECTIVE DATE

**WHEREAS**, Miami-Dade County is in the midst of an unprecedented construction boom; and

**WHEREAS**, there are more than 100 major projects under construction in the Miami-Dade County metropolitan area utilizing heavy hoisting equipment such as tower cranes; and

**WHEREAS**, the construction boom and use of cranes and other heavy hoisting equipment have resulted in an increased number of tragic accidents and fatalities; and

**WHEREAS**, OSHA statistics show 14 construction fatalities in the South Florida area during the period from January to May, 2006 which nearly match fatalities for the entire year of 2005; and

**WHEREAS**, Miami-Dade County's geographical location exposes it to the onslaught of hurricanes of increasing frequency in recent seasons; and

**WHEREAS**, the presence of a substantial number of cranes and other heavy hoisting equipment during hurricane season poses serious concerns of public safety; and

√

Agend___em No. 7(A)
Page No. 2

WHEREAS, large metropolitan areas such as Los Angeles and New York City have local laws that govern crane operations and safety; and

WHEREAS, a number of responsible equipment owners/manufacturer's representatives, operators, and other members of the construction industry have served in the Crane and Heavy Equipment Advisory Committee (the "Committee"), an advisory board to Miami-Dade County's efforts to enhance these safety regulations; and

WHEREAS, the Committee has recommended the enhanced safety regulation of cranes and heavy hoisting equipment in substantially the form of the following ordinance as necessary and desirable for the protection of public health and safety,

NOW, THEREFORE, BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA, that:

Section 1. Chapter 8E of the Code of Miami-Dade County is hereby created to read in its entirety as follows:

### 8E.   CRANES AND HOISTING EQUIPMENT

#### Section 8E-1.  Definitions.

As used in this chapter, the following words and terms shall have the following meaning:

(a)     Accredited Certifying Entity - Accredited Certifying Entity. A certifying entity is any organization whose certification program is accredited by the National Commission for Certifying Agencies (NCCA).

(b)     Crane - means a machine for lifting or hovering a load and moving it horizontally, in which the consisting mechanism is an integral part of the machine.  It may be driven manually or by power and may be a fixed or mobile machine and includes tower crane and mobile tower crane.  The term does not include stackers, lift trucks, power shovels, backhoes, excavators, concrete pouring equipment, or straddle type mobile boat hoists.

Agenda Item No. 7(A)
Page No. 3

(c)    Hoisting Equipment – includes mast climbing work platforms, tower cranes, mobile cranes and personnel and material hoists.

(d)    Mast – A vertical structure that supports and guides the elevating assembly.

(e)    Mast Climbing Work Platform – A powered device consisting of an elevating assembly, base or chassis and mast, that when erected, is capable of supporting personnel, material, equipment, tools, and is capable of traveling vertically in infinitely adjustable increments to reach the desire work level.

(f)    Tower Crane – a hammerhead, luffing, or other type of tower crane that is regularly assembled and disassembled for use at various sites.  It is usually characterized by provisions to facilitate erection and dismantling and may include features to permit climbing or telescoping.

(g)    Mobile Cranes – means a mobile or locomotive crane covered within the scope defined in Section I, American Society of Mechanical Engineers (ASME) B30.5 and includes crawler cranes, locomotive cranes, wheel mounted cranes, and any variation hereof that retain the same fundamental characteristics.

(h)    Personnel and Material Hoist -  A mechanism and its hoistway for use in connection with the construction, alteration, on-going maintenance or demolition of a building, structure or other work.  It is used for hoisting and lowering workers or material or both, and is equipped with a car that moves vertically on guide members.

### Section 8E-2.          Purpose, Scope, Exceptions.

This chapter shall provide a uniform standard for the construction, installation, operation and use of Hoisting Equipment, for the inspection and certification of Hoisting Equipment, and for the education and certification of Hoisting Equipment operators.  This chapter shall be of uniform applicability throughout incorporated and unincorporated Miami-Dade County.  The following Hoisting Equipment is specifically exempted from the application of this chapter:

(a)    Mobile cranes having a boom length of less than 25 feet or a maximum rated load capacity of less than 15,000 pounds.

(b)    Operators of electric line trucks.

6

Agenda Item No. 7(A)
Page No. 4

    (c)     Marine terminal operations.

    (d)     Aerial work platforms or boom supported platforms covered by the ANSI/SIA A92 series of standards.

#### Section 8E-3.       Referenced Codes and Standards.

The codes and standards referenced in this chapter shall be considered part of the requirements of this code to the prescribed extent of each such reference. Where differences occur between provisions of this Chapter and referenced codes and standards, the provisions of this chapter shall apply. Where differences occur between different provisions of referenced codes and standards, the conflict shall be resolved in favor of the provision that provides the greatest measure of protection to the public safety. Where standards are not otherwise specified, the applicable standards shall be those set forth by the manufacturer's published literature including all updates with respect to the equipment at issue.

#### Section 8E-4.       Tower Crane Manufacture, Installation and Use.

The following standards shall be applicable to tower cranes proposed to be installed and used within the incorporated and unincorporated areas of Miami-Dade County:

        (a)     the equipment manufacturers (O.E.M.) specifications,

        (b)     the mandatory rules contained within the applicable ASME B30 standard of the American Society of Mechanical Engineers made applicable to construction Tower Cranes (ASME B30.3),

        (c)     the most current standards of the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") applicable to cranes including 29 CFR 1926.550,

        (d)     the wind load standards contained within SEI/ASCE-7 for High Velocity Hurricane Zones as applied to the crane base foundation, the tie-ins to the building, the free-standing height and the height above the top tie-in. In applying the provisions of SEI/ASCE-7 for temporary installations, the design velocity reduction factors contained in SEI/ASCE

7

Agend___em No.  7(A)
Page No. 5

37-02 may be considered in factoring the wind speed at the discretion of the Building Official.  The decision shall be made by the Building Official on a site-by-site basis. Factors to be considered include, but are not limited to, proximity to other structures, density, swing radius of the crane, hoist location and other safety requirements.

**Section 8E-5.**          **Standards for Mobile Crane Manufacture, Installation and Use.**

The following standards shall be applicable to mobile cranes proposed to be installed and

used within the incorporated and unincorporated areas of Miami-Dade County:

(a)     the equipment manufacturers (O.E.M.) specifications,

(b)     the mandatory rules contained within the applicable standard of the American Society of Mechanical Engineers made applicable to construction Mobile Cranes (ASME B30.5),

(c)     the most current standards of the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") applicable to cranes including 29 CFR 1926.550 and 29 CFR 1910.80.

**Section 8E-6.**          **Standards for Personnel/Material Hoist Manufacture, Installation and Use.**

The following standards shall be applicable to personnel/material hoists proposed to be

installed and used within the incorporated and unincorporated areas of Miami-Dade County:

(a)     the equipment manufacturers (O.E.M.) specifications,

(b)     the mandatory rules contained within the applicable ANSI standard (ANSI A10.4).  Bridging devices may be used provided they meet manufacturers specifications,

(c)     the most current standards of the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") applicable to cranes including 29 CFR 1926.552,

(d)     the wind load standards contained within SEI/ASCE-7 for High Velocity Hurricane Zones as applied to the hoist tie ins and the floor shoe connections. In applying the provisions of SEI/ASCE-7 for temporary installations, the design velocity reduction factors contained in SEI/ASCE



37-02 may be considered in factoring the wind speed at the discretion of the Building Official. The decision shall be made by the Building Official on a site-by-site basis. Factors to be considered include, but are not limited to, proximity to other structures, density, hoist location and other safety requirements.

### Section 8E-7.        Crane Siting.

Together with the permit documents, the permit applicant shall submit to the Building Official all required applications and/or approvals related to the operation of the crane on site, including but not limited to any required by the Federal Aviation Administration pursuant to 14 CFR Part 77 and FAA Advisory Circular AC70/7460-2K and the Miami-Dade County Transit Adjacent Construction Manual.

### Section 8E-8.        Building Permits and Inspections.

(a)    Permits. In addition to the requirements of the Florida Building Code, and of Section 8-10 of this Code, the following shall apply to any construction involving the placement or erection of Hoisting Equipment regulated by this chapter. The structural building plan for any threshold building shall contain sufficient information for the Building Official to determine whether the Hoisting Equipment to be used in the construction complies with the standards set forth in this section. In the event that the complete fabrication, including the connection to the foundation, base structural support and attachment to the building structure, requires the preparation and approval of shop drawings, the Building Official may issue the building permit subject to permit holds. The permit holds shall be released upon completion and approval of all required information. In the event that the permitted construction is not of a threshold building, the Hoisting Equipment information shall be supplied to the Building Official together with the permit application.

(b)    Inspections. In the event that any construction involves the use of Hoisting Equipment regulated by this chapter, the Building Official shall require the use of a Special Hoisting Equipment Inspector. The Special Crane Inspector shall perform the inspections set forth in the approved inspection plan and report to the Building Official the results of the inspections in forms designed for that purpose. The Building Official shall be authorized to suspend or revoke the building permit relating to any construction for gross negligence, gross incompetence, failures to correct any identified failures to comply with the applicable

Agend__ __em No. 7(A)
Page No. 7

standards, or willful or repeated disregard of any occupational safety standard or order involving the crane. Decisions of the Building Official may be appealed to the Board of Rules and Appeals in the manner set forth in this Code.

(c)   Schedule. The inspection plan shall provide for crane inspection which shall occur at a minimum as follows:

Tower Cranes

-   After initial erection of crane

-   After each time top-climbing is completed on the crane and/or after each period of 6 months the crane has been erected on a construction project
-   After the passage of a hurricane or catastrophic wind event in the area of installation of the crane

-   After a major incident/accident involving the tower crane
    Mobile Cranes

-   Annual inspection with a rated load test within the configuration of the crane and the manufacturer's recommended load chart

-   After a major incident/accident involving the mobile crane

-   After the passage of a hurricane or catastrophic wind event in the area of an assembled and erected mobile crane

Personnel/Material Hoists

-   After initial erection of personnel/material hoist, including a full rated load drop test

-   Every 90 days, including a full load drop test

-   After a hurricane

-   After a major incident/accident involving the personnel/material hoist

(d)   Hoisting Equipment Inspection Companies.   To perform inspections of Hoisting Equipment, companies and/or individuals shall comply at a minimum with the following requirements:

/O

Agenda Item No. 7(A)
Page No. 8

- Incorporated in the State of Florida conducting third party inspections on cranes and/or personnel/material hoists.

- Cannot be wholly or partly owned by an Equipment Owner or Equipment Manufacturer in the crane and hoisting industry.

- Cannot be receiving financial support from an equipment Owner or Equipment Manufacturer in the crane and hoisting industry.

- Must carry a minimal of $1,000,000 professional liability insurance.

- Must carry a minimal of $1,000,000 general liability insurance.

- Must have in its full time employment an individual who is qualified to perform inspections as set forth in subpart (e) below.

(e) Qualification of individuals performing crane inspections. To perform the requisite crane inspections, individuals must possess the following qualifications:

- Minimal five (5) years of work experience in the crane industry specifically erecting, operating, maintaining, inspecting and supervising equipment. Two (2) of the five (5) years of documented work experience must be in the capacity of conducting inspections of cranes.

- Must provide proof, reasonably satisfactory to the Certifying Entity of completion of at least one (1) factory sponsored or approved technical course to inspect the subject equipment.

- Cannot be an employee of an Equipment Owner or Equipment Manufacturer in the crane and hoisting industry.

(f) Qualifications of personnel/material hoist employee inspector. To perform the requisite inspections, an individual must possess the following qualifications:

- Minimal five (5) years of work experience in the personnel/material hoisting industry, specifically erecting, operating, maintaining, inspecting and supervising of equipment. Two (2) years of the five (5) years of documented work experience must be in the capacity of

Agend___:m No. 7(A)
Page No. 9

conducting inspections of personnel/material hoists and following all applicable codes and standards.

-   Must provide proof, reasonably satisfactory to the Certifying Entity of completion of at least one (1) factory sponsored or approved technical course to inspect the subject equipment

(g)   The Office of Building Code Compliance of Miami-Dade County shall be the Certifying Entity responsible for certifying and decertifying Special Hoisting Equipment Inspectors in accordance with the provisions of this Chapter.  To implement the provisions of this Chapter, the County Manager shall issue an implementing order to be approved by this Board.

(h)   Decisions of the Building Official based on the application of this Chapter shall be appealed to the Board of Rules and Appeals in the manner set forth in this Code.

(i)   The Board of Rules and Appeals may interpret provisions of this Chapter in order to cover a special case if it appears the provisions do not definitely cover the point raised or if the intent of the provision is not clear, or that ambiguity exists in the wording, but shall have no authority to grant variances where this Chapter is clear and specific

### Section 8E-9.          Tower Crane and Mobile Crane Operator Qualifications and Certifications.

(a)   Tower cranes and mobile cranes shall only be operated by individuals certified in accordance with this Section.  Certificates shall be issued by the Accredited Certifying Entity and shall be valid for five years.  Certificates shall be issued to operators who:

(1)   Pass a physical examination conducted by a physician which at a minimum shall include the examination criteria specified in the American Society of Mechanical Engineers (ASME) B30.5-2000 standard, Chapter 5-3.1.2(a)(1-5, 7, 8)  or the U.S. Department of Transportation (US DOT) physical examination requirements contained in 49 CFR Sections 391.41 through 391.49.

(2)   Pass a substance abuse test.  The level of testing shall be consistent with the standard practice for the industry where the crane is in use and this test shall be conducted by a recognized laboratory service.

/2

Agend___em No.  7(A)
Page No. 10

(3)    Pass a written examination developed, validated, and administered in accordance with the Standards for Educational and Psychological Testing (Copyright 1999) published jointly by the Joint Committee of the American Educational Research Association, the American Psychological Association, and the National Council in Measurement in Education.  The exam shall test knowledge and skills identified as necessary for safe crane operations and shall, at a minimum, include the following:

(a)    Operational characteristics and controls, including characteristic and performance questions appropriate to the crane type for which qualification is sought;

(b)    emergency control skills, such as a response to fire, power line contact, loss of stability, or control malfunction;

(c)    a demonstration of basic arithmetic skills necessary for crane operation and the ability to read and comprehend the crane manufacturer's operation and maintenance instruction materials, including load capacity information (load charts) for the crane for which certification is sought;

(d)    knowledge of the requirements of this chapter, chapters 5-0 through 5-3 of The American Society of Mechanical Engineers (ASME) B30.5-2000 and B30.5a-2002 Addenda to the standard for mobile and locomotive cranes or chapters 4-0 through 4-3 of the ASME B30.4-1996 standard for portal, tower, and pedestal cranes or Chapter 3-3 of the ASME B30.3-1993 standard for Construction Tower Cranes, depending on the type of crane(s) the operator intends to operate.

(4)    Pass a "hands-on" examination to demonstrate proficiency in operating the specific type of crane, which at a minimum shall include pre-start and post-start inspection, maneuvering skills, shutdown, and securing procedures.

(b) Re-certification.  Crane operators shall re-certify every five (5) years and shall be required to meet all of the qualifications set forth in subsection (a).  Operators with at least one-thousand (1,000) hours of documented experience operating the specific type of crane for which re-certification is sought as covered by this section during the immediately preceding certification period and who meet the physical examination,

13

Agend___ _m No. 7(A)
Page No. 11

substance abuse, and written examination requirements set forth in subsections (a)(1), (a)(2) and (a)(3) of this section shall not be required to take the "hands-on" examination specified in subsection (a)(4) to re-certify. (c)  Trainees may be authorized to operate mobile or tower cranes provided they are under the direct supervision of an operator possessing a valid certificate of competency for the type of crane operated by the trainee.  The term direct supervision means the supervising operator is in the immediate area of the trainee and within visual sighting distance and able to effectively communicate with the trainee.  When performing direct supervision, the supervising operator shall have no other duties other than to observe the operation of the crane by the trainee.

(c)     Existing Operators.  For the period commencing on the effective date and ending one year thereafter, the certification requirements of this Section shall be deemed satisfied by any individual who satisfies the waiver requirements of this subsection.  To be certified by waiver an individual must:  (a) make written application for waiver from the Accredited Certifying Entity; (b) demonstrate to the Accredited Certifying Entity three years experience in the operation of tower cranes and mobile cranes and (c) pass a hands-on examination to demonstrate proficiency in operating the specific type of crane.  A certification obtained by waiver shall be valid only for five years and shall be subject to recertification in the same manner provided for in subsection (b) above.

### Section 8E-10.        Communications.

(a)     Crane to Crane.  When more than one crane is used within the same swing radius an independent and clear channel of radio communication and operable equipment to transmit same between the cranes shall be provided.

(b)     Signal persons.  Prior to signaling crane operators, all signal persons shall be tested and demonstrate their qualifications in the following areas:

(1)     basic understanding of crane operation and limitations,

(2)     standard hand and voice signals as provided in the applicable American National Standard (ANSI).

Certification of the signal person shall be in accordance with any recognized federal, state or local testing program.

### Section 8E-11.        Hurricane Preparedness.

General.  Hoisting Equipment shall abide by the following hurricane precautions:

/4

Agend___em No. 7(A)
Page No. 12

(1)     Hoisting    Equipment    shall    abide    by    all
manufacturers recommendations relating to hurricane
preparedness including any relating to the placement and
removal of advertisement banners, the use and removal of
rigging.

(2)     Tower crane turntable must be lubricated prior to
the event.

(3)     Mobile cranes with fixed booms must be laid down
whenever feasible.

(4)     Hydraulic cranes must have booms retracted and
stored.

(5)     Any    counterweighted    hoist    must    have    the
counterweight locked below the top tie-in.

(6)     Tower crane must be set in the weathervane
position.

(7)     All rigging must be removed from the hoist block.

(8)     All power at base of tower shall be disconnected by
a general contractor.

(9)     A hurricane preparedness plan which conforms with
the requirements of this section shall be available at the site
for inspection.

### Section 8E-12.          Additional Enforcement.

In addition to other methods for enforcement provided in this Chapter, the Miami-Dade

County Building Code Compliance Office shall be authorized to enforce the provisions of this

Section through the issuance of civil violations fines in the manner more specifically provided in

Chapter 8CC of this Code.  Violation of this Chapter involving any damages to the public health

and safety may also be addressed by the County through an action in court for injunctive or other

available relief.

Section 2.    Chapter 8CC of the Code of Miami-Dade County, Florida, is hereby amended to read as follows:[1]

*            *            *

**Sec. 8CC-10.  Schedule of civil penalties.**

*            *            *

| Code Section | Description of Violation | Civil Penalty |
|---|---|---|
| | *            *            * | |
| >>8E | Failure to maintain or operate crane or heavy equipment in a safe condition in accordance with applicable standards; failure to abide by hurricane preparedness plan<< | $500.00 |

Section 3.    If any section, subsection, sentence, clause or provision of this ordinance is held invalid, the remainder of this ordinance shall not be affected by such invalidity.

Section 4.    It is the intention of the Board of County Commissioners, and it is hereby ordained that the provisions of this ordinance, including any Sunset provision, shall become and be made a part of the Code of Miami-Dade County, Florida.  The sections of this ordinance may be renumbered or re-lettered to accomplish such intention, and the word "ordinance" may be changed to "section," "article," or other appropriate work.

Section 5.    This ordinance shall become effective ten (10) days after the date of enactment unless vetoed by the Mayor, and if vetoed, shall become effective only upon an override by this Board.  By exception, the provisions of this ordinance relating to the qualifications and certification of crane operators shall become effective on January 1, 2009

---

[1]    Words stricken through and/or [[double bracketed]] shall be deleted.  Words underscored and/or >>double arrowed<< constitute the amendment proposed.  Remaining provisions are now in effect and remain unchanged.

*16*

Agenda Item No.  7(A)
Page No. 14

provided that by that date tests attendant to the certification program are offered in the Spanish

and Creole languages.  Existing installations of tower cranes and personnel/material hoists shall

be governed by the standards provided in Section IV of ASME B30.3

PASSED AND ADOPTED:


Approved by County Attorney as
to form and legal sufficiency.

Prepared by:

Hugo Benitez

Sponsored by Commissioner Audrey M. Edmonson

1 7

ELECTRONIC

**MAY. 1, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

≈JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

The Associated Builders and Contractors
Florida East Coast Chapter, et al.

## DEFENDANTS

Miami-Dade County, a political
Subdivision of the State of Florida

**(b)** County of Residence of First Listed Plaintiff __Broward County__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant __Miami-Dade County__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Brian A. Wolf, 954-761-8700
One East Broward Blvd., Suite 620
Ft. Lauderdale, FL 33301

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Dade 08CV21274-(Mano / Simonton)

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | or Defendant) | Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | ☐ 900 Appeal of Fee Determination |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | Under Equal Access to |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | | Justice |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of |
| | | ☐ 550 Civil Rights | | | State Statutes |
| | | ☐ 555 Prison Condition | | | ☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 USDC §1983; violation of due process supremacy clause, dormant commerce
clause injunctive relief.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE 5-1-08

SIGNATURE OF ATTORNEY OF RECORD