UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 08-21274-CIV-UNGARO/SIMONTON

THE ASSOCIATED BUILDERS AND
CONTRACTORS FLORIDA EAST
COAST CHAPTER, *et al.*

      Plaintiffs,

v.

MIAMI-DADE COUNTY,

      Defendant.

_____/

## MIAMI-DADE COUNTY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Defendant, Miami-Dade County (the "County"), files this opposition memorandum of law to Plaintiffs', the Associated Builders and Contractors Florida East Coast Chapter, the South Florida Associated General Contractors of America, Inc., the Florida Crane Owners Council and the Construction Association of South Florida (collectively, the "Plaintiffs"), Emergency Motion for a Preliminary Injunction and Memorandum in Support ("Plaintiffs' Motion"). For the reasons set forth below, the Court should deny Plaintiffs' emergency motion for a preliminary injunction.

## BACKGROUND

**The Crane Ordinance**

On or about March 28, 2008, the County enacted Miami-Dade County Ordinance No. 08-34 titled "Ordinance Relating to the Safety of Cranes and Other Hoisting Equipment; Providing Definitions; Providing Standards for Manufacture and Installation; Providing for Education and Certification of Operators; Establishing Standards for Hurricane Preparedness; Providing for Enforcement; Creating Chapter 8E of the Code;

and an Effective Date" (the "Crane Ordinance" or "ordinance").[1]   The County enacted the Crane Ordinance "for the protection of public health and safety." *See* Crane Ordinance Whereas Clauses.  More specifically, as set forth in the whereas clauses, the ordinance was a response to the "unprecedented construction boom" in Miami-Dade County, including "more than 100 major projects under construction . . . utilizing heavy hoisting equipment such as tower cranes" resulting "in an increased number of tragic accidents and fatalities." *Id.*[2]   The ordinance also acknowledged that "Miami-Dade County's geographical location exposes it to the onslaught of hurricanes of increasing frequency in recent seasons" and concluded that "the presence of a substantial number of cranes and other heavy hoisting equipment during hurricane season poses serious concerns of public safety." *Id.*

The ordinance promulgates standards for the construction, installation, operation and use of hoisting equipment, including tower cranes and creates a new section of the Miami-Dade County Code, Section 8E, which, in part, regulates the installation of tower cranes. *See id.* at Section 1.  For example, consistent with its stated purpose of protecting the public health and safety from tower crane accidents – especially during hurricane season – the ordinance promulgates wind load standards for tower cranes as applied to the crane base foundation and the tie-ins to buildings. *See id.* at § 8E-4(d).  Similarly, the ordinance imposes mandatory hurricane preparedness standards. *See id.* at § 8E-11.  The ordinance also provides authority to Building Officials to suspend or revoke building permits for failure to comply the ordinance's standards. *See id.* at § 8E-8(a)-(b).  Per the

---

[1] A copy of the County Crane Ordinance is attached as Exhibit A to Plaintiffs' motion.

[2] In fact, two publicized crane accidents occurred in New York and Miami the same month the Crane Ordinance was adopted, March 2008.  On March 16, 2008 in New York City, a 19-story crane broke away from an apartment tower under construction toppling down and demolishing a four-story brownstone townhouse and four other buildings. Seven people died, including a Miami-Dade County resident who was in the town house on which the crane collapsed.  Ten days later, in Miami on March 26, 2008 a section of a construction crane plummeted 30 floors onto a home.  Two persons died in the Miami crane accident.

ordinance, the Building Official's decisions may be appealed to the County's Board of Rules and Appeals ("BORA"). *See id.*[3]

**Plaintiffs' Challenge to the Crane Ordinance**

Plaintiffs challenge the legality of the Crane Ordinance. Plaintiffs' specific challenges are that: (1) the ordinance is preempted by the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 *et seq.*, and federal regulations promulgated under OSHA; (2) the ordinance violates Plaintiffs' procedural due process rights; (3) the ordinance violates Plaintiffs' substantive due process rights; and (4) the ordinance violates the Constitution's Commerce Clause – U.S. Const. Art. I § 8 cl. 3 – because it unduly burdens interstate commerce. Plaintiffs do *not* specify how the ordinance provisions conflict with federal statutes or regulations. The preemption "conflicts" and constitutional issues Plaintiffs allude and cite to relate only to tower cranes and, more specifically, the standards for tower cranes located at Section 8E-4.[4]

For example, Plaintiffs cite Section 8E-4(b) providing that tower cranes comply with "the mandatory rules contained within the applicable ASME B30 standard of the American Society of Mechanical Engineers made applicable to construction Tower Cranes (ASME B30.3)." Plaintiffs concede that "[t]his is the standard for construction of Tower Cranes." Plaintiffs' Motion at 3; *see also* Compl. at ¶ 21. Plaintiffs also cite, but do not challenge, the ordinance's requirement for compliance with "the most current standards of the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA) applicable to cranes including 29 CFR 1926.550." *See* Plaintiffs' Motion at 3.

Plaintiffs do challenge the ordinance's incorporation of "the wind load standards contained within SEI/ASCE-7 for High Velocity Hurricane Zones as applied to the crane base foundation, the tie-ins to the building, the free-standing height and height above tie-

---

[3] BORA was created as the County's construction regulation board entrusted with overseeing the uniform enforcement of the Building Code and maintaining the proper standard of construction throughout Miami-Dade County. *See* Miami-Dade County Code § 8.4(a).

[4] There is absolutely no challenge or even mention in Plaintiffs' Motion or complaint of the ordinance's provisions concerning mobile cranes – see § 8E-5 – or personnel/material hoists – see § 8E-6.

in." *See id.*   Plaintiffs assert that SEI/ASCE-7 (the "hurricane wind load standard") was created to provide wind load standards for permanent structures and are not applicable to construction tower cranes because construction tower cranes are temporary, not permanent, structures.   But, Plaintiffs admit that the ordinance itself provides a Building Official the discretion to apply, what Plaintiffs deem, the correct wind load standard by utilizing SEI/ASCE 37-02. *See id.* at 3-4.   Plaintiffs characterize the ordinance as deeming all Tower Cranes to be permanent structures that must comply with SEI/ASCE 7, the hurricane wind load standard, "unless the Building Official decides to allow the contractor to utilize SEI/ASCE 37-02 to calculate the wind loads." *See id.*[5]   Plaintiffs assert that "SEI/ASCE 37-02 is the recognized objective standard that is used in the industry for Tower Cranes because Tower Cranes are temporary structures." *See id.* at 4. Plaintiffs assert "[i]f the Building Official does not exercise his discretionary authority to utilize the SEI/ASCE 37-02, then the Tower Cranes currently utilized in the County will not be able to comply with wind load requirements of the Crane Ordinance." *See id.* Plaintiffs assert that no cranes exist that will meet the hurricane wind load standard contained in SEI/ASCE-7.

In their motion, Plaintiffs also mention the ordinance's requirement for the use of a Special Hoisting Inspector at Section 8E-8(b).  *See id.* at 5.  The Plaintiffs also cite Section 8E-8(g) of the ordinance incorrectly stating that the provision designates of the County's Office of Building Code Compliance (BCCO) as the certifying entity for crane operators. *See id.*  Section 8E-8(g) actually designates the BCCO as the certifying entity for Special Hoisting Inspectors.  Plaintiffs, however, do not explain, in any way, how Sections 8E-8(b) and (g) are unconstitutional or legally deficient.  Accordingly, the only specific substantive ordinance provisions Plaintiffs seemingly identifies and attacks as unconstitutional concern the hurricane wind load standard for *tower cranes*.

---

[5] Section 8E-4(d) of the ordinance provides that "[i]n applying the provisions of SEI/ASCE-7 for temporary installations, the design velocity reduction standards contained in SEI/ASCE 37-02 may be considered in factoring the wind speed at the discretion of the Building Official.  The decision shall be made by the Building Official on a site-by-site basis.  Factors to be considered include, but are not limited to, proximity to other structures, density, swing radius of the crane, hoist location and other safety requirements."

4

## ARGUMENT

A preliminary injunction can only be granted where the plaintiffs establish that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable injury unless the injunction issues; (3) their threatened injury outweighs whatever damage the proposed injunction may cause the other party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). As the Eleventh Circuit has emphasized, a "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Id.* (internal quotations and citations omitted). Plaintiffs cannot meet the burden required for this Court's issuance of an injunction.

**I.     Plaintiffs Have No Likelihood of Success on the Merits.**

As shown below, Plaintiffs cannot succeed on the merits. Plaintiffs' claims attacking the County's Crane Ordinance are not ripe for controversy. The Plaintiffs' claims concern potential and abstract disputes that depend on actions that the building officials may or may not take.

Even ignoring Plaintiffs' threshold failure to allege a ripe claim, Plaintiffs' claims still fail. The Plaintiffs overreach in their assertion of OSHA preemption. Plaintiffs' substantive and procedural due process claims are insufficiently pled and unsustainable. Plaintiffs also fail to establish that the County's crane ordinance run afoul of the Commerce Clause.

**1. Plaintiffs' claims are not ripe for review.**

The Plaintiff's are not likely to prevail at trial as their claims are not ripe. Plaintiffs' claims are purely conjectural as they challenge future events that may or may not happen.

This Court may only hear cases that are ripe. A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Atlanta Gas Light Co. v. F.E.R.C.*, 140 F.3d 1392, 1404 (11th Cir. 1998) *citing Texas v. United States,* 523 U.S. 296 (1998). Limiting review only to cases that are ripe "prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Nat'l Adver. Co. v. City of*

*Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005); *see also Midrash Sephardi Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004) (upholding dismissal of part of case as unripe where party challenging process to permit construction of churches did not apply for a permit, and the court could not "determine from the record how the [ordinance] will be applied."). Additionally, the ripeness doctrine is meant "to protect the [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Adver.*, 402 F.3d at 1339. In order to show that claim is ripe, a plaintiff must demonstrate that "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.*

In analyzing whether local ordinances dealing with land use and building permits, the Eleventh Circuit has traditionally found that a claim is not ripe if a plaintiff has not actually applied for and been denied a permit. For example, in *National Advertising*, the plaintiff believed that Miami's zoning code would not allow Miami to grant plaintiff a permit to install a sign; believing it to be a futile act, the plaintiff did not bother waiting for the denial of its permit prior to bringing litigation. That claim was rejected as unripe, as plaintiff "failed to obtain a final denial of its applications." *Id.*

Similarly, where a party felt that local ordinance precluded construction of adult book store, but did not bother applying for zoning approval, the case was not ripe for judicial review; in the absence of "a binding conclusive administrative decision, no tangible controversy exists and, thus, we have no authority to act." *Digital Props. Inc. v City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997). The plaintiff in that case could not just assume that City ordinance lead to an injurious result; the plaintiff instead had "the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme to [plaintiff's] proposal." *Id.* The Eleventh Circuit has applied similar logic in finding challenges to ordinances dealing with building permits to be unripe. *See Strickland v. Alderman*, 74 F. 3d 260 (11th Cir. 1996) (holding that claim that ordinance deprived plaintiff of due process in the permitting of buildings not ripe until the local government has applied the ordinance to the plaintiff.)

In this case, the Plaintiffs contend that – depending on how the County applies the Crane Ordinance – their members' business interests *could be* affected.  Plaintiffs concede that the County Ordinance might be interpreted in such a way as to alleviate their concerns.  In reality, Plaintiffs only argue that application of the hurricane wind load standard in the Crane Ordinance may adversely affect their businesses.  But, Plaintiffs admit that the ordinance itself provides a Building Official the discretion to apply, what Plaintiffs deem, the correct wind load standard by utilizing SEI/ASCE 37-02.  What Plaintiffs are concerned about, therefore, is not the ordinance—because the ordinance allows for application of a standard that Plaintiffs do not find objectionable—but a possible future hypothetical application of the ordinance.

There are no allegations that any constituent members of the Plaintiff associations has, in fact, had the "incorrect" and "illegal" hurricane wind load standard applied to their cranes.  There are no allegations that any Plaintiff members have, in fact, even applied to the County for a permit under the Crane Ordinance standards.  There are no allegations here that the Crane Ordinance has been interpreted to prevent the use of even one tower crane.  There are no allegations that Plaintiffs have sought a definitive interpretation of the Crane Ordinance's application to a particular building site.

Accordingly, Plaintiffs claims are not ripe for review.  As in *Digital*, Plaintiffs are before the Court on an assumption that the County will apply an ordinance in a particular way.  As in *Digital*, this assumption is not sufficient for Plaintiffs to present a ripe claim.  Pursuant to the ripeness doctrine this Court should not indulge Plaintiffs and speculate how a Building Official, with respect to a discrete, particular parcel of property, on which a discrete, particular crane is to be operated, will apply the wind load standards of the Crane Ordinance.[6]

Given the discretion provided to the Building Official in the ordinance and that Plaintiffs object to only one possible use of that discretion, Plaintiffs' claims do not ripen until a Building Official has taken what Plaintiffs deem an adverse action under the ordinance.  Only then will the Court have a concrete, rather than a purely speculative,

---

[6] The ordinance in fact provides that the Building Official to make decisions on a finely grained "site by site" basis, taking into account such factors as proximity to other structures, density, swing radius, and hoist location..  *See* Crane Ordinance § 8E-4(d).

case or controversy before it.  In sum, Plaintiffs' claims are not ripe and are unlikely to succeed on the merits.  Plaintiffs' claims for injunctive relief must fall.

### 2. **Plaintiffs' claims are not preempted under OSHA.**

Plaintiffs are not substantially likely to prevail on the merits because the Crane ordinance is not preempted by the OSHA.  Plaintiffs argue that OSHA preempts the ordinance.  To support this broad facial challenge, Plaintiffs misinterpret the ordinance and anticipate its unlawful enforcement and implementation. A careful analysis of the ordinance and a comparison of its provisions with OSHA standards and regulations, reveals that the ordinance does not constitute in a direct, clear and substantial way, a regulation of worker health and safety, and accordingly, is not preempted by the OSHA.

In their motion, Plaintiffs ignore basic legal standards.  First and foremost, local enactments for the protection of public safety, such as the ordinance under review, have been presumed to be valid against claims of federal preemption. *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 716 (1985); *Thiele v. Norfolk & W. Ry.,* 68 F.3d 179, 181 (7th Cir. 1995);   A challenge to a public safety regulation must overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation. *See id.*   In fact, the courts have traditionally held that "the regulation of health and safety matters is primarily, and historically, a matter of local concern." *Id.*  This deferential standard of reviewing police power enactments preserves the balance between the federal government and the states in the area where the interests of the states are the strongest.

Plaintiffs seek to overcome this presumption by reference to the OSHA itself. But, a careful comparison of the intent, effect and operative provisions of OSHA and the regulations promulgated thereunder, with the intent, effect and operative provisions of the ordinance reveal that Plaintiffs' attempt to overcome the presumption in favor of local enactments must fail.

The stated intent of OSHA is to assure, so far as possible, every man and woman in the nation safe and healthful working conditions and to preserve the nation's human resources. 29 U.S.C. § 651(b). To implement the OSHA's objectives, the Secretary of Labor was empowered "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." *Id.* at § 651(b)(3).  By its express

terms, OSHA does not preempt states from asserting jurisdiction under State law "over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title" *Id.* at § 667(a).  Further, the Act provides that any state wishing to assume responsibility for the development and enforcement of occupational and safety issues with respect to which a standard has been promulgated shall submit a State plan for the development of such standards and their enforcement. *Id.* at § 667(b). An "occupational safety and health standard is defined as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes reasonably necessary or appropriate to provide safe or healthful employment and places of employment." *Id.* at § 652 (8).

In *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88 (1992) the Supreme Court announced the applicable standards for OSHA preemption. *Gade* involved competing federal and state regulations relating to hazardous waste operations. The OSHA regulations required that workers engaged in activities exposing them to hazardous waste receive a minimum of 40 hours instruction off site, and a minimum of three days actual field experience under the supervision of a trained supervisor. *Id.* at 92. Two years later, the State of Illinois passed two licensing laws, requiring hazardous waste operators to provide a certified record of at least 40 hours of training under an approved program conducted within Illinois, to pass a written examination, and to complete an annual refresher course of at least eight hours. *Id.* At 93.  In addition, under the state scheme, operators were to submit a certified record showing operation of equipment used in hazardous waste handling for a minimum of 4000 hours. *Id.*  As a result of the dual licensing scheme, hazardous waste operators were required to ensure that their operators receive not only the 3 days of field experience under OSHA but also the 500 days of experience required by the State law. *Id.*

The Court found the state laws violated OSHA preemption. In reaching the result, however, the Court explained that not all state laws providing for public safety, not even all state laws which provide for worker safety, were occupational safety and health standards regulated by the OSH Act. The Court held that in order to be preempted by OSHA, a state public safety law must be an "*occupational safety and health standard*". *Id.* at 105 (emphasis added).  For a state law to constitute such a standard, it must

constitute in a direct, clear and substantial way regulation of worker health and safety. *Id.* at 107. The Court went on to explain:

> [S]tate laws of general applicability (such as laws regarding traffic safety or fire safety) that do not conflict with OSHA standards and that regulate the conduct of workers and non-workers alike would generally not be preempted.  Although some laws of general applicability may have a "direct and substantial" effect on worker safety, they cannot fairly be characterized as "occupational" standards, because they regulate workers simply as members of the general public.

*Id.*

Beyond that, the Court declined to hold that Congress intended to preempt the entire field of occupational safety and health regulation as suggested by Plaintiffs *See* Plaintiffs' Motion at 10.  Rather, the Court concluded that "federal regulation of the workplace was not intended to be all encompassing". *Gade*, 505 U.S. at 96. The Court held that in the absence of Labor Department approval of a plan submitted pursuant to OSHA, the statute precluded state regulation of occupational safety and health issues only where a federal standard has been established. The purpose of the preemption, the Court explained was to promote occupational safety and health "while at the same time avoiding duplicative, and possibly counterproductive regulation." *Id.* at 102.

Plaintiffs state in conclusory fashion that the ordinance is a non-approved regulation that asserts jurisdiction in an area occupied by Congress. Beyond such sweeping assertions, neither the complaint nor Plaintiffs' emergency motion contain much detail to support the conclusory claim that the ordinance is an occupational safety and health regulation, or beyond that, one for which OSHA has provided standards. A careful analysis of the ordinance under the standards set forth in *Gade* reveals that it is not an occupational safety and health regulation, or a regulation of areas for which OSHA has promulgated standards, and is therefore not preempted by the OSH Act.

> ### (a) The ordinance is not preempted by the OSHA because it does not constitute in a direct, clear and substantial way, regulation of worker health and safety.

The ordinance is intended primarily to prevent the collapse of cranes, gigantic structures which have become prevalent in Miami-Dade County. In particular, the ordinance is directed to the structural soundness of the crane, its attachment to the adjacent structure, and the wind loading of the crane. Preventing the collapse of a crane is

a matter not of regulating the relationship between employer and employee, but affects the public at large. Falling cranes kill people, workers and non workers alike. They crash into adjacent structures. They fall on public and private property and roadways. The collapse of a crane can be a major urban catastrophe. The collapse of a crane during a high wind event, when employees should not even be on the crane, affects only the general public residing in the adjacent structures.  Under the test announced in *Gade*, as a law of general applicability intended to safeguard the public from such collapse particularly in high wind events, the ordinance cannot be held an impermissible occupational standard.

The intent of the ordinance, articulated in the whereas clauses, reveal the County's concern with the construction boom in the area, the number of cranes, hurricanes of increasing frequency and ferocity and the need to protect the public safety. The substantive provisions of the ordinance are specifically designed to prevent crane collapse and to make sure it is secure during hurricanes and other high wind events.  For example, Section 8E-8 provides for a system of building permits and inspections under the authority of the County's Building Official, local official entrusted with safeguarding the structural soundness of buildings. In particular, information with respect to the connection to the foundation, base structural support and attachment to the building structure is to be contained with the structural building plan for a threshold building. The Building Official must also require inspections by a special crane inspector in accordance with an approved inspection plan. As a remedy, the Building Official is authorized to suspend the building permit for any construction. *See* Crane Ordinance § 8E-8(b).

Significantly, none of these provisions are addressed to the crane operators, employers, or employees. These requirements are requirements of the structure, and as such are under the state regulatory scheme are directed to the permit holder, typically the general contractor and his specialty engineers. In this fashion, the ordinance in question is more akin to a building code regulation, specifically permitted under *Gade*, than to an impermissible occupational regulation.

The case of *Davis v. States Drywall and Painting, Inc.,* 645 N.E. 2d 304 (Ill App. Ct.  1995) is an example of the courts' reluctance to extend OSHA preemption to the area of building code regulation. The court declined to preempt the Illinois Structural Work

Act, which provided that all cranes be erected and constructed in a safe suitable and proper manner and subjected to the regulation any owner, contractor or other person having charge of the construction or erection. *Id.* at 303. The Court held that the Structural Work Act did not constitute in a direct, clear and substantial way the regulation of worker health and safety. *Id.* at 306. The Court reasoned that while the goals of OSHA and the state act may overlap, that fact alone would not render the state act unenforceable where the state act does not interfere or conflict with OSHA. *Id.* Among the reasons for the Court's holding, the Court cited that the state regulation not only served employees but also invitees in the construction premises – Id. at 309 – and that the regulation governed not the employer but the care and conduct of third parties, owners, general contractors and others having charge of construction activities, persons not specifically addressed in *Gade*. *Id.* at 306. In this context, the Court held that absent any clear expressions to the contrary, Congress did not intend to preempt the Structural Work Act, "where construction activities have traditionally been governed by State law." *Id.* The same factors compel a finding of no OSHA preemption of the ordinance here under review. Even more clearly than the Illinois state law, the ordinance is a law of general applicability, protecting not only the invitee, but also the public at large. Like the Illinois law, it governs the soundness of construction, an area traditionally governed by state law. Finally, it too is directed not to the employer but to the owner and contractor, through the system of structural permits and inspections.

> **(b) The ordinance is not preempted by OSHA because it does not regulate occupational safety and health issues where federal standards are in effect.**

Relying on *Gade*, Plaintiffs argue that the ordinance is preempted by the OSHA because it is a non approved occupational standard where a federal standard is in effect. *See* Plaintiffs' Motion at 12. Yet, as argued above, Plaintiffs fail to recognize that the provisions at issue cannot even arguably be considered occupational standards. Plaintiffs also fail to identify where they believe the ordinance attempts to regulate in areas where a federal standard is in effect.

The Supreme Court recognized three types of preemption: (1) express, where the act itself contains explicit preemptive language (2) field preemption, "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress

left no room for the States to supplement it and (3) conflict preemption "where compliance with both federal and state regulation is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress. *Gade*, 505 U.S. at 98, 112. In its application of these tests to OSHA, the plurality of the Court in *Gade* rejected Plaintiff's arguments for express preemption (Plaintiffs' Motion at 9) and field preemption (Plaintiffs' Motion at 11). Instead, the Court adopted a more limited holding concluding that "nonapproved state regulations of occupational safety and health issues for which a federal standard is in effect is impliedly preempted as in conflict with the full purposes of the OSH Act". *Id.* at 98-99. Thus, to overcome the presumption that the ordinance is a valid exercise of police power, Plaintiffs must plead, and prove that the ordinance regulates occupational safety and health issues where federal standards are in effect.

Unlike the supplemental regulation struck in *Gade*, the Crane Ordinance does not attempt to supplement, or to create a different or duplicative standard in those areas regulated by OSHA, but rather by its express terms incorporates the OSH Act and OSHA standard. Thus the ordinance expressly incorporates the most current OSHA standards in Sections 8E-4(c); 8E-5(c) and 8E-6(c). Beyond that, the equipment manufacturers specifications in 8E-4(a), 8E-5(a) and 8E-6(a) are also OSHA standards for the equipment involved – see 29 CFR §§ 1926.550(a)(1) & 1926.550(c)(1). So are the standards of the American Society of Mechanical Engineers. With respect to these sections of the ordinance there is no impermissible supplementing of the OSHA standards because the ordinance merely incorporates the OSHA standards and, as set forth below, there is no preemption against the state creating a parallel enforcement mechanism to enforce federal requirements through its own building official.

### (c) OSHA does not regulate wind load standards for tower cranes.

The only area where Plaintiffs even suggest that the ordinance frustrates a federal standard is in the area of wind loads. The ordinance adopts standards for wind load for tower cranes in 8E-4(d). As argued above, wind load standards are not occupational standards. But even in this area, neither the Complaint nor Plaintiffs' Motion, nor the affidavits attached to the Motion, identify the specific federal standard that exists with respect to the subject of the challenged ordinance, the wind load to be applied to the

"crane base foundation, the tie-ins to the building, the free-standing height and the height above the top tie-in" in the case of tower cranes. *See* Crane Ordinance § 8E-4(d).

Plaintiffs' problem is more than one of pleading. No federal wind load standard appears to exist nor, more specifically, standards for the wind loading of the crane's connections to its foundation and supporting structures.  If there are no federal standards under the OSHA, states are free to regulate for the public health, safety and welfare. *See Empire State Restaurant and Tavern Ass'n, Inc. v. State of New York*, 360 F. Supp. 2d 454 (N.D.N.Y. 2005).[7]

Without a federal standard, Plaintiff's argument for OSHA preemption in this area must fail. The OSH Act simply does not prevent the County from creating a wind load requirement where the federal government has not established one but instead had delegated this determination to the industry.

### (d) County enforcement of OSHA and OSHA regulations is not forbidden.

Plaintiffs claim that crane owners and operators are being required to adhere to unlawful standards that the federal government has not approved. As discussed above, except in the discrete area of wind loads, which are not occupational standards, and for which no certain federal standard appears to exist in any event, the ordinance merely creates an additional enforcement mechanism for the standards contained in OSHA and OSHA regulations. The enforcement by the County of OSHA requirements, through a system of building permits and inspections and through fines is not preempted.

In *Dukes v. Sirius Construction, Inc.,* 73 P.3d 781 (Mont. 2003), the Montana Supreme Court considered the issue of whether the state's enforcement of the OSHA's scaffolding requirements through its building inspector was permissible under federal law. The Court reasoned that state enforcement was preempted only when it was enforcement of the state's own occupational safety and health standards, holding that:

---

[7]  In fact, in a 1985 OSHA Standards Interpretation, a U.S. Department of Labor OSHA regional engineer responded to an inquiry regarding OSHA standards on wind conditions for cranes – the OSHA regional engineer's response is unequivocal: "There is not a construction standard for the use of cranes during high wind conditions." OSHA Std. Interp. 1910.37, 1985 WL 728809 (D.O.L.). A copy of this interpretation correspondence is attached to this response.

> [i]f the state wishes to impose an additional duty upon a non-employer to inspect for compliance by the contractor, subcontractor or builder with "applicable" federal regulations and to ensure enforcement of those standards, the imposition of such duty does not subject the employer to duplicative or supplemental occupational safety and health standards, and thus, does not stand as an obstacle to the accomplishment and execution of the full purposes or objectives of the OSH Act namely, "to assure so afar as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources."

Further, the Court held that the duty to inspect was not a standard contemplated under the OSH Act and that the inspection and enforcement of federal safety and health standard by a state officer was not preempted.

### 3. Plaintiffs' procedural due process claim fails.

Plaintiffs do not and cannot succeed on their procedural due process claim. Plaintiffs seemingly assert their members' property interests are implicated by alleging that the County's enactment and enforcement of the Crane Ordinance will cause a loss of business for the Plaintiffs' members.   To the extent that Plaintiffs allege that the ordinance's *enactment* violates procedural due process rights, such a claim fails.   The deprivation of "property interests does not implicate procedural due process because *the legislative process itself provides all of the process that is due.  Meola v. Department of Corrections,* 732 So.2d 1029, 1035 (Fla. 1998) (emphasis in original), citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982); *accord, Langley v. Singletary,* 645 So.2d 961 (Fla.1994); *Griffin v. Singletary,* 638 So.2d 500 (Fla.1994); *see 75 Acres, LLC v. Miami-Dade County, Fla*., 338 F.3d 1288, 1294 (11th Cir. 2003) (County's moratorium on the issuance of building permits did not violate individual property owners' rights to due process because it was a legislative act applicable to a wide class of persons and not directed at particular individuals.).  Here, the Crane Ordinance's progression through the legislative process, which includes a duly noticed public hearing on the ordinance, defeats any procedural due process attack on the ordinance's enactment.

To the extent that Plaintiffs allege that the ordinance's enforcement violates procedural due process, that also fails.  The Due Process Clause requires a private citizen be given notice and opportunity to be heard before a governmental official seizes his property. *See Quik Cash Pawn & Jewelry, Inc. v. Sheriff of Broward County*, 279 F.3d

1316, 1322 (11th Cir. 2002).  In analyzing such due process claims, courts examine whether (1) the plaintiff had a property interest of which he was deprived by state action, and (2) the plaintiff received sufficient process regarding that deprivation. *See Ross v. Clayton County,* 173 F.3d 1305, 1307 (11th Cir.1999). With respect to the second prong of this examination, courts must examine the adequacy of all remedies available to the plaintiff in order to ascertain whether these remedies are so inadequate as to violate clearly established law. *See Bussinger v. City of New Smyrna Beach*, 50 F.3d 922, 926 (11th Cir.1995).  Applying this law, the Eleventh Circuit, in *Abele v. Hernando County,* 161 Fed. Appx. 809, 2005 WL 3501869 (11th Cir. Dec. 23, 2005), analyzed a procedural due process claim attacking the actions of a building official taken pursuant to a building code ordinance.  The Eleventh Circuit affirmed the lower court's entry of summary judgment defeating the procedural due process claim. *Id.* at 816.  The Eleventh Circuit concluded that adequate state remedies existed where the challenged ordinance: (1) provided a means to appeal building official decisions to a local board of appeals; and (2) state law provided a right to appeal the local board's decision to a Florida state circuit court. *Id.*

Under the Eleventh Circuit's holding in *Abele*, Plaintiffs' procedural due process attack on the Crane Ordinance fails.  Like the plaintiff in *Abele*, members of the Plaintiffs' associations can appeal decisions taken under the Crane Ordinance to a local board, BORA – see Crane Ordinance at § 8E-8(b), (h) and (i) – and, like *Abele*, BORA's decisions are appealable to a state court. *See* Miami-Dade County Code § 8(g).

### 4. Plaintiffs' substantive due process claim fails.

Plaintiffs' substantive due process claim also fails.  Plaintiffs do not allege that the Crane Ordinance targets a protected constitutional class nor do Plaintiffs allege that the ordinance implicates a fundamental constitutional right.  Because the challenged Crane Ordinance neither targets a protected class nor implicate a fundamental right, this Court should apply the highly deferential rational basis test to the Plaintiffs' substantive due process challenge. *See Abele*, 161 Fed. Appx. at 814-15 (applying rational basis test for substantive due process challenge to building code ordinances); *see also Schwarz v. Kogan*, 132 F.3d 1387, 1390 (11th Cir.1998) (holding substantive due process challenges not implicating fundamental rights are reviewed under the highly deferential rational

basis standard). "In order to survive this minimal scrutiny, the challenged provision need only be rationally related to a legitimate government purpose." *Id.* at 1390-91. Under rational basis review, courts first identify "a legitimate government purpose ... which the enacting government body could have been pursuing." *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822 (11th Cir.1998) (internal quotations omitted). Second, courts determine "whether a rational basis exists for the enacting government body to believe the legislation would further the hypothesized purpose." *Id.*

Applying this test, the Eleventh Circuit in *Abele* affirmed a summary judgment in favor of Hernando County, Florida as to a plaintiff's substantive due process challenge to building code ordinances. *Abele*, 161 Fed. Appx. at 815. The Eleventh Circuit reasoned that in enacting building code ordinances, Hernando County could have been pursuing the legitimate government purpose advanced by Hernando County, providing for the safety and health of the residents of Hernando County. *Id.; see also Bannum*, 157 F.3d at 823 (holding public safety is a legitimate goal for the purpose of rational basis review). The Eleventh Circuit in *Abele* also concluded that as building code ordinances provide standards to ensure the structural, electrical, and plumbing integrity of residential structures, a rational basis existed for Hernando County to believe the ordinances further this legitimate government purpose. *Abele*, 161 Fed. Appx. at 815.

Here, the Crane Ordinance easily passes the minimal scrutiny imposed by the rational basis test. Like the building code ordinances in *Abele*, the County here could have been – and, in fact, was – pursuing the legitimate governmental purpose of protecting public health and safety. As set forth in the body of the ordinance itself, the Crane Ordinance provides standards for the construction, installation, operation and use of hoisting equipment, including tower cranes. The County promulgated standards in response to public safety concerns arising because of incidents of fatal crane accidents and the presence of a large number of cranes and other heavy hoisting equipment during hurricane season. Because Plaintiffs cannot reasonably assert that the promotion of public safety is an illegitimate governmental purpose, their substantive due process claims fail to allege any cognizable claim.

**5.  Plaintiffs' dormant commerce clause fails.**

Plaintiffs' challenge under the Dormant Commerce Clause also fails.  In their motion, Plaintiffs concede that the Crane Ordinance does not discriminate against interstate commerce. *See* Plaintiffs' Motion at 17.  Accordingly, to prevail on their dormant commerce clause claim, Plaintiffs must show that the burden imposed by the Crane Ordinance on interstate commerce is clearly excessive in relation to the putative local benefits. *See United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 127 S.Ct. 1786, 1797 (2007).  In applying this analysis the Supreme Court cautioned that courts must "be particularly hesitant" to interfere with traditional local government functions under the guise of the Commerce Clause. *See id.* at 1796.  Plaintiffs do not make any showing on the alleged burden the Crane Ordinance may incidentally impose on interstate commerce or how this unsubstantiated burden clearly exceeds the public health and safety benefits the Crane Ordinance provides. Plaintiffs do not and cannot show that there is a substantial likelihood on prevailing on the merits of their Dormant Commerce Clause claim.

**II.    Plaintiffs Do Not and Cannot Meet the Remaining Standards for this Court's Issuance of an Injunction.**

Plaintiffs also fail to satisfy the other three requirements to obtain the extraordinary remedy of a preliminary injunction.  Plaintiffs fail to demonstrate, and cannot prove, any injury in this facial challenge to the ordinance. Because Plaintiffs' controversy is not ripe, they cannot be said to be subject to irreparable harm.  Nor can Plaintiffs' threatened injury, speculative at best, outweigh the damage caused to the County and its citizens by invalidation of the ordinance and its provisions to protect the public health and safety.  Finally, in light of the imminence of the hurricane season, the significant protections afforded to the public by the Crane Ordinance against crane accidents would be compromised, thus disserving the public interest.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the County respectfully requests that the Court deny Plaintiffs' request for the extraordinary remedy of a preliminary injunction.

Respectfully submitted,

R.A. CUEVAS, JR.
MIAMI-DADE COUNTY ATTORNEY


By: **s/Eduardo W. Gonzalez**
Eduardo W. Gonzalez
Assistant County Attorney
Florida Bar No. 0129607
Telephone: (305) 375-5151
Facsimile: (305) 375-5634
Email: ewg@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida  33128

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2008, at or before 5:00 pm, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>    s/Eduardo W. Gonzalez              </u>
Assistant County Attorney

## SERVICE LIST

**Case No. 08-21274-CIV-UNGARO/SIMONTON**
**United States District Court, Southern District of Florida**

**Counsel for Plaintiffs**

Brian A. Wolf, Esq.
Email: bawolf@smithcurrie.com
Maura K. Anderson
Email: mkanderson@smithcurrie.com
Smith, Currie & Hancock LLP
One East Broward Blvd. - Suite 620
Ft. Lauderdale, FL 33301
Telephone:  (954) 761-8700
Facsimile:  (954) 524-6927
Served by Notice of Electronic Filing

**Counsel for Defendant**

Hugo Benitez
Email: HEB2@miamidade.gov
Assistant County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151; Facsimile: (305) 375-5634

Eduardo W. Gonzalez
Email: ewg@miamidade.gov
Assistant County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151; Facsimile: (305) 375-5634