# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-21274-CIV-UNGARO

ASSOCIATED BUILDERS AND
CONTRACTORS FLORIDA EAST
COAST CHAPTER, *et al*.,

_____Plaintiffs,

v.

MIAMI-DADE COUNTY,

_____Defendant.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE came before the Court upon Plaintiffs' Emergency Motion for Preliminary

Injunction, filed May 8, 2008.  (D.E. 5.)  Defendant filed its Response on May 12, 2008.  (D.E.

11.)  A hearing on the Emergency Motion for Preliminary Injunction was held before the Court

on May 16, 2008.

THE COURT has considered the Motion, the pertinent portions of the record, and is

otherwise fully advised in the premises.

Plaintiffs, the Associated Builders and Contractors Florida East Coast Chapter, Inc.

("ABC-FEC"), the South Florida Associated General Contractors of America, Inc. ("SFAGC"),

the Florida Crane Owners Council ("FCOC"), and the Construction Association of South Florida

("CASF"), move this Court for a preliminary injunction enjoining Defendant Miami-Dade

County from enforcing the ordinance codified at Chapter 8E of the County Municipal Code

("Crane Ordinance" or "Ordinance").  In support of their motion, Plaintiffs argue that the Crane

Ordinance is preempted by the Occupational Safety and Health Act of 1970, 84 Stat. 1590, 29

U.S.C. § 651 *et seq.* ("OSH Act"), and the standards promulgated by the Occupational Safety and Health Administration ("OSHA").  Plaintiffs further argue that the Crane Ordinance is unconstitutional because it violates Plaintiffs' rights to procedural and substantive due process under the United States and Florida Constitutions, and that the Crane Ordinance is unconstitutional under the dormant commerce clause.  The following findings and conclusions are based on the parties' motion and response, proposed findings of fact and conclusions of law, the exhibits attached thereto, and the evidence submitted at the hearing.  For the reasons discussed below, the Court's ultimate conclusions are as follows:

(1)     Plaintiffs' claim that the Crane Ordinance is preempted by the OSH Act is ripe for review, while Plaintiffs' procedural and substantive due process claims and dormant commerce clause claim are not ripe for review.

(2)     Regardless of whether the Ordinance directly conflicts with the OSH Act and OSHA regulations in all of the respects asserted by Plaintiffs, Plaintiffs have established a likelihood of prevailing on their claim that the Crane Ordinance is a dual impact law that directly, substantially, and specifically regulates occupational safety and health, and is preempted by the OSH Act to the extent that it is a non-approved state regulation of occupational safety and health issues governed by the federal standards prescribed in the applicable OSHA regulations, 29 C.F.R. §§ 1926.550 and 1926.552.  The preempted provisions of the Crane Ordinance may be severed, and the remaining provisions of the Ordinance may be saved from preemption.

(3)     The federal occupational safety and health standards prescribed in 29 C.F.R. §§ 1926.550 and 1926.552, which require employers engaged in construction work to comply with the manufacturer's specifications and limitations applicable to the operation of all cranes and

2

hoists—including compliance with DIN wind load standards— do not constitute an unlawful delegation of legislative power to an interested private party.

(4)    Plaintiffs have met their burden of showing that a preliminary injunction should issue because (a) there is a substantial likelihood of prevailing on the merits; (b) there is a substantial threat of suffering irreparable injury if the injunction is not granted; (c) the threatened injury to Plaintiffs outweighs the threatened harm the injunction may cause Defendant; and (d) granting the preliminary injunction will serve the public interest.

<u>FINDINGS OF FACT</u>

1.    Plaintiffs are four separate trade associations in the construction industry and crane and crane services industry, and are non-profit corporations incorporated under the laws of the State of Florida.

2.    Miami-Dade County is a political subdivision of the State of Florida.

3.    On or about March 28, 2008, the County enacted Miami-Dade County Ordinance No. 08-34, titled "Ordinance Relating to the Safety of Cranes and Other Hoisting Equipment; Providing for Education and Certification of Operators; Establishing Standards for Hurricane Preparedness; Providing for Enforcement; Creating Chapter 8E of the Code; Providing Severability, Inclusion in the Code, and an Effective Date."  (Pls.' Ex. 1 (Crane Ordinance).)

4.    The Crane Ordinance's "Whereas Clause" states that the County is "in the midst of an unprecedented construction boom," that "more than 100 major projects under construction in [the County] are utilizing heavy hoisting equipment such as tower cranes," that as a result there have been an "increased number of tragic accidents and fatalities," and that according to OSHA statistics, there were fourteen construction fatalities in South Florida during the period

3

from January 2006 to May 2006, which is the approximate number of construction fatalities for the entire year of 2005.  (Pls.' Ex. 1(Crane Ordinance).)

5.     The Crane Ordinance's "Whereas Clause" further states that the County is exposed to "the onslaught of hurricanes of increasing frequency in recent seasons," and that the substantial number of cranes and heavy hoisting equipment in the County poses serious concerns of public safety during hurricane season; that other major metropolitan areas have local laws that govern crane operations and safety; that a Committee composed of equipment owners, manufacturers, operators and other members of the construction industry has served as an advisory board to the County's efforts to enhance safety regulations; and that the Committee has recommended the regulations contained in the Crane Ordinance "as necessary and desirable for the protection of public health and safety."  (Pls.' Ex. 1 (Crane Ordinance).)

6.     The stated purpose of the Crane Ordinance is to "provide a uniform standard for the construction, installation, operation and use of Hoisting Equipment [defined as mast climbing work platforms, tower cranes, mobile cranes and personnel and material hoists], for the inspection and certification of Hoisting Equipment, and for the education and certification of Hoisting Equipment operators."  (Pls.' Ex. 1 (Crane Ordinance Section 1, §§ 8E-1(c) & 8E-2).)

7.     The Crane Ordinance sets forth standards for tower crane manufacture, installation, and use[1] (Crane Ordinance Section 1, § 8E-4); mobile crane manufacture,

_____

[1]Specifically, with respect to the manufacture, installation, and use of tower cranes, the Ordinance provides that the following standards are applicable: (a) the equipment manufacturers (O.E.M.) specifications; (b) the mandatory rules contained within the applicable ASME B30 standard (ASME B30.3); (c) the most current applicable OSHA standards including 29 C.F.R. § 1926.550; and (d) the SEI/ASCE-7 wind load standards, which may be reduced at the discretion of the Building Official on a site-by-site basis. (Crane Ordinance Section 1, § 8E-4.)

installation and use[2] (Crane Ordinance Section 1, § 8E-5); and personnel and material hoist

manufacture, installation and use[3] (Crane Ordinance Section 1, § 8E-6).

8.    The standards for the manufacture, installation and use of tower cranes and

personnel and material hoists set forth in the Ordinance include the wind load standards

contained within SEI/ASCE-7 for High Velocity Hurricane Zones as applied to the crane base

foundation, the tie-ins to the building, the free-standing height and the height above the top tie-in

(for tower cranes) and as applied to the hoist tie-ins and floor shoe connections (for hoists).[4]

(Crane Ordinance Section 1, §§ 8E-4(d) & 8E-6-(d).)

9.    The Crane Ordinance also promulgates standards for tower crane and mobile

crane operator qualifications and certifications (Crane Ordinance Section 1, § 8E-9); and signal

person qualifications and certifications (Crane Ordinance Section 1, § 8E-10(b)); and

---

[2]With respect to the manufacture, installation, and use of mobile cranes, the Ordinance provides that the applicable standards are (a) the O.E.M. specifications; (b) the mandatory rules contained within the applicable ASME standard (ASME B30.5); and (c) the most current OSHA standards applicable to cranes including 29 C.F.R. §§ 1926.550 and 1910.80.  (Crane Ordinance Section 1, § 8E-5.)

[3]With respect to the manufacture, installation, and use of personnel and material hoists, the Ordinance provides that the applicable standards are (a) the O.E.M. specifications; (b) the mandatory rules contained within the applicable ANSI standard (ANSI A10.4); (c) the most current OSHA standards applicable to hoists including 29 C.F.R. § 1926.552; and (d) the SEI/ASCE-7 wind load standards, which may be reduced at the discretion of the Building Official on a site-by-site basis.  (Crane Ordinance Section 1, § 8E-6.)

[4]The Ordinance further provides that in applying the provisions of SEI/ASCE-7 for temporary installations, the design velocity reduction factors contained in SEI/ASCE 37-02 may be considered in factoring the wind speed at the discretion of the Building Official, and that the decision shall be made by the Building Official on a site-by-site basis.  (Crane Ordinance Section 1, §§ 8E-4(d) & 8E-6(d).)  The Building Official is to take into consideration such factors as proximity to other structures, density, swing radius of the crane, hoist location, and other safety requirements.  (Crane Ordinance Section 1, §§ 8E-4(d) & 8E-6(d).)

requirements for crane to crane communications (Crane Ordinance Section 1, § 8E-10(a)).

10.     In addition, the Crane Ordinance establishes requirements for crane siting (Crane Ordinance Section 1, § 8E-7), and requirements for building permits and inspections relating to construction involving the placement, erection or use of Hoisting Equipment, including requirements for inspection schedules, Hoisting Equipment inspection companies, and individual inspector qualifications and certifications (Crane Ordinance Section 1, § 8E-8).

11.     The Crane Ordinance also sets forth requirements for hurricane preparedness of Hoisting Equipment.   (Crane Ordinance Section 1, § 8E-11.)

12.     The Crane Ordinance authorizes the Miami-Dade County Building Code Compliance Office to enforce the provisions of the Ordinance through the issuance of civil violations and fines, and creates a right of action by the County for injunctive or other available relief where violation of the Ordinance involves damages to the public health and safety.   (Crane Ordinance Section 1, § 8E-12 & Section 2, § 8CC-10.)

13.     The Ordinance contains a severability provision.   (Crane Ordinance Section 3.)

14.     The applicable OSHA regulations, contained in 29 C.F.R. §§ 1926.550 and 1926.552, prescribe occupational safety and health standards applicable to all construction workplaces involving cranes and derricks, 29 C.F.R. § 1926.550, and material hoists, personnel hoists, and elevators, 29 C.F.R. § 1926.552.  29 C.F.R. § 1910.12.

15.     The OSHA regulations require employers to comply with the manufacturer's specifications and limitations applicable to the operation of all cranes, derricks, hoists, and elevators, and provide that where manufacturer's specifications are not available, the limitations assigned to the equipment shall be based on the determinations of a qualified engineer competent

in the field.   29 C.F.R. §§ 1926.550(a)(1) & 1926.552(a)(1).

16.     All manufacturer's specifications for tower cranes in the United States require the crane to comply with DIN or the European Standard for wind loads.[5]  These standards require the cranes to comply with a wind load of 93 mph.  (Aff. of Adam Cote ¶ 8 & Hr'g Test. of Adam Cote.)

17.     The OSHA regulations set forth requirements for the inspection and certification of crane and hoisting equipment.  29 C.F.R. §§ 1926.550(a)(5)-(6); 1926.550(b)(2); 1926.550(c)(5); 1926.552(c)(15) & 1926.552(c)(17).  The OSHA regulations also set forth requirements for the inspection of cranes by incorporating the mandatory rules of the applicable ASME standard.  (Pls.' Ex. 11 (ASME B30.5-1968).)

18.     The OSHA regulations establish standards for hand signals to crane and derrick operators.  29 C.F.R. § 1926.550(a)(4).

19.     The OSHA regulations also establish standards for crane operator qualifications and certifications by incorporating the mandatory rules of the applicable ASME standards.  (Pls.' Ex. 11 (ASME B30.5-1968).)

<u>CONCLUSIONS OF LAW</u>

I.     <u>Ripeness</u>

As a preliminary matter, the Court must determine whether Plaintiffs' claims are ripe for review.  The ripeness inquiry requires a two part determination: (1) the fitness of the issues for judicial review, and (2) the hardship to the parties of withholding court consideration.  *Nat'l*

---

[5]DIN is an acronym for Deutsche Industrie Norm, German Industrial Standard, which can be found at www2.din.de.

*Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005). When a plaintiff challenges a governmental act, the issues are ripe for judicial review if a plaintiff shows he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act. *Id*. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974) (citations omitted). "'One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" *Id*. (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)); *see also Pac. Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190 (1983).

    A.    *Plaintiffs' Claim That the Crane Ordinance Is Preempted by the OSH Act Is Ripe for Review*

In *Pacific Gas & Electric*, the Court considered whether challenges to two provisions of California's Warren-Alquist State Energy Resources Conservation and Development Act—seeking a declaration that the provisions were unconstitutional because they were preempted by the Atomic Energy Act—were ripe for review. *Pac. Gas & Elec. Co.*, 461 U.S. at 197-98. The first provision, § 22524.1(b), addressed the interim storage of spent fuel, and provided that before any additional nuclear plants could be built, the State energy commission must determine on a case-by-case basis that there would be "adequate capacity" for storage of a plant's spent fuel rods "at the time such nuclear facility requires . . . such storage." *Id*. at 197. The second provision, § 22524.2, dealt with the long-term solution to nuclear wastes, and imposed a moratorium on the certification of new nuclear plants until the State energy

commission found that "there ha[d] been developed and that the United States through its authorized agency ha[d] approved and there exist[ed] a demonstrated technology or means for the disposal of high-level nuclear waste." *Id*. at 198.

Addressing the ripeness of the challenge to each respective provision, the *Pacific Gas & Electric* Court found that the preemption challenge to § 22524.2, which imposed a moratorium on the certification of new nuclear plants, was ripe, whereas the preemption challenge to § 22524.1(b), which addressed the interim storage of spent fuel, was not ripe. *Id*. at 201. The Court applied the two-part ripeness inquiry, and found that "[b]oth of these factors counsel[ed] in favor of finding the challenge to the waste disposal regulations in § 22524.2 ripe for adjudication." In reaching this determination, the Court explained that "the question of preemption [was] predominantly legal, and although it would be useful to have the benefit of California's interpretation of what constitutes a demonstrated technology or means for the disposal of high-level nuclear waste, resolution of the preemption issue need not await that development." *Id*. Moreover, the Court found that "postponement of the decision would likely work substantial hardship on the utilities," and ultimately on the citizens of California, insofar as a postponement would require the industry to proceed without knowing whether the moratorium was valid. *Id*. The Court observed that if the petitioners were right and the moratorium was void because it hindered the commercial development of atomic energy, "'delayed resolution would frustrate one of the key purposes of the [Atomic Energy] Act.'" *Id*. (quoting *Duke Power Co. v. Carolina Envnt'l Study Group, Inc.*, 438 U.S. 59, 82 (1978)).

By contrast, the *Pacific Gas & Electric* Court found that "[q]uestions concerning the constitutionality of the interim storage provision, § 22524.1(b), [were] not ripe for review,"

9

because although the California waste disposal statute "operate[d] on a statewide basis, the [California] Energy Commission [was] directed to make determinations under § 22524.1(b) on a case-by-case basis." *Id*. at 203.  The Court explained that because it could not "know whether the Energy Commission [would] ever find a nuclear plant's storage capacity to be inadequate," judicial consideration of this provision should await further developments." *Id*.

Applying the same principles in this action, this Court finds that both factors to be considered in evaluating the ripeness of a claim weigh in favor of finding that Plaintiffs' preemption challenge to the Crane Ordinance is ripe for review.  As with the preemption challenge to § 22524.2 in *Pacific Gas & Electric*, Plaintiffs' preemption challenge to the Crane Ordinance in this action is predominantly legal.  Furthermore, "the operation of the [Crane Ordinance] against [Plaintiffs] is patent," and therefore as to the preemption challenge, "it is irrelevant to the existence of a justiciable controversy" that Plaintiffs have not applied for a permit under the Crane Ordinance.  *See Rail Reorganization Act Cases*, 419 U.S. at 143.  Also, postponement of the Court's decision as to whether the Ordinance is preempted by the OSH Act would likely work a hardship to Plaintiffs, and delayed resolution would frustrate one of the key purposes of the OSH Act, because Plaintiffs would have to conform to two separate regulatory schemes.  *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) (finding that Congress intended to subject employers and employees to only one set of regulations—federal or state—and that because Congress sought to promote occupational safety and health while at the same time avoiding duplicative, and possibly counterproductive regulation, it established a system of uniform federal occupational health and safety standards, but gave States the option of preempting federal regulations by developing their own occupational safety and health programs

10

and obtaining approval by the Secretary of Labor).  Accordingly, the Court finds that Plaintiffs'

claim that the Crane Ordinance is preempted by the OSH Act is ripe for review.

> B. *Plaintiffs' Procedural and Substantive Due Process Claims and Dormant Commerce Clause Claim Are Not Ripe for Review*

Applying the two-part ripeness inquiry as to Plaintiffs' procedural and substantive due

process claims and their dormant commerce clause claim, the Court finds that both factors weigh

in favor of finding that Plaintiffs' procedural and substantive due process challenges and dormant

commerce clause challenge to the Crane Ordinance are not ripe for review.

As the basis for their procedural due process challenge, Plaintiffs argue that the Crane

Ordinance is unconstitutional because it completely interferes with their right to engage in a

lawful occupation, insofar as it is impossible for the Plaintiffs' members' businesses to comply

with the Crane Ordinance's standards.  The Court finds that because Plaintiffs have not actually

applied for a permit under the Crane Ordinance, or otherwise attempted to comply with the

Ordinance, the Court cannot assess in any concrete or meaningful way Plaintiffs' claim that it is

impossible for the Plaintiffs' members' businesses to comply with the Crane Ordinance's

standards.  Accordingly, the Court finds that the procedural due process claim is not "of

sufficient concreteness to evidence a ripeness for review."  *See Nat'l Advertising Co.*, 402 F.3d at

1339 (quoting *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)).

Having determined that the procedural due process claim is not presently fit for judicial

review, the Court must also determine whether it would cause the parties hardship to withhold

consideration of the procedural due process challenge.  The Court finds—especially in view of

the Court's determination that the preemption challenge is both ripe for review and with

substantial likelihood of prevailing on the merits—that it will not cause the parties hardship to withhold consideration of the procedural due process challenge.  Thus, the Court finds that Plaintiffs' procedural due process claim is not ripe for review.

As the basis for their substantive due process challenge, Plaintiffs argue that the Ordinance is unconstitutional because the provisions establishing wind load standards allow for the arbitrary and capricious enforcement of the Ordinance insofar as the Ordinance confers absolute discretion on the Building Official to determine whether to classify a crane or hoist as a temporary structure or a permanent structure, without setting forth sufficient guidelines to limit the Building Official's determination.  The Court finds that, as with the questions concerning the constitutionality of the interim storage provision, § 22524.1(b) of the California law at issue in *Pacific Gas & Electric*, Plaintiffs' substantive due process challenge is not ripe for review because the Ordinance directs the Building Official to make determinations under the Ordinance on a case-by-case basis.  *See Pac. Gas & Elec. Co.*, 461 U.S. at 203.  As in *Pacific Gas & Electric*, because this Court cannot know whether the Building Official will ever find a tower crane or hoist in the County to be a permanent structure, "judicial consideration of this provision should await further developments."  *See id.*; *see also Nat'l Advertising Co.*, 402 F.3d at (finding that because the plaintiff never obtained an official rejection of its permit applications, the plaintiff's claim—that the City of Miami's sign code was unconstitutional because it failed to contain adequate procedural guidelines and vested excessive discretion in the hands of City officials to either approve or deny applications to construct signs—was not ripe for review).  The Court notes that its hardship analysis with respect to the procedural due process claim is equally applicable to the substantive due process claim.  Thus, the Court finds that Plaintiffs' substantive

due process claim is not ripe for review.

As the basis for their dormant commerce clause challenge, Plaintiffs argue that the Crane Ordinance is unconstitutional because it imposes a burden on interstate commerce that is clearly excessive in relation to the local benefits of the Ordinance.  As with the procedural and substantive due process claims, because Plaintiffs have not actually applied for a permit under the Crane Ordinance, or otherwise attempted to comply with the Ordinance, the Court cannot assess in any concrete or meaningful way how the Ordinance will be applied, and whether the Ordinance imposes a burden on interstate commerce that is clearly excessive in relation to the local benefits of the Ordinance.  Thus, the Court finds that Plaintiffs' dormant commerce clause claim is not "of sufficient concreteness to evidence a ripeness for review."  *See Nat'l Advertising Co.*, 402 F.3d at 1339 (quoting *Digital Props., Inc.*, 121 F.3d at 589).  As with the substantive due process claim, the Court's hardship analysis with respect to the procedural due process claim is equally applicable to the dormant commerce clause claim.  Thus, the Court finds that Plaintiffs' dormant commerce clause claim is not ripe for review.

II.     Whether and to What Extent the Crane Ordinance Is Preempted by the OSH Act

A.      *Preemption*

The OSH Act authorizes the Secretary of Labor to establish mandatory federal occupational safety and health standards.  29 U.S.C. § 655; *see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 92 (1992).  As the United States Supreme Court explained in *Gade*, "[f]ederal regulation of the workplace was not intended to be all encompassing."  *Gade*, 505 U.S. at 96.  Rather, the OSH Act provides in § 18(a) that it does not "prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with

respect to which no [federal] standard is in effect."  29 U.S.C. § 667(a); *see also Gade*, 505 U.S. at 96-97.  Moreover, in § 18(b) the OSH Act gives States the option of preempting federal regulation entirely, by submitting to the Secretary of Labor a State plan for development and enforcement of occupational safety and health standards relating to any occupational safety and health issue with respect to which a federal standard has been promulgated by the Secretary under the OSH Act.  29 U.S.C. § 667(b); *see also Gade*, 505 U.S. at 97.

In *Gade*, the Supreme Court held that "nonapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act."  *Gade*, 505 U.S. at 98-99.  The *Gade* Court further held that "a state law requirement that directly, substantially, and specifically regulates occupational safety and health is an occupational safety and health standard within the meaning of the Act," and "[t]hat such a law may also have a nonoccupational impact does not render it any less of an occupational standard for purposes of pre-emption analysis."  *Id*. at 107. In other words, a dual impact law—one that addresses public safety as well as occupational safety concerns—that regulates an occupational safety or health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act.  *Id*. at 108.

Applying these principles, the Court finds that Plaintiffs have established a likelihood of prevailing on their contention that the Crane Ordinance is a dual impact law insofar as it addresses public safety as well as occupational safety or health concerns, and that, under *Gade*, the Crane Ordinance is impliedly preempted by the OSH Act to the extent that it establishes occupational safety or health standards for matters governed by the federal standards prescribed

in the applicable OSHA regulations, 29 C.F.R. §§ 1926.550 and 1926.552.

     B.    _Severability_

     Having determined that Plaintiffs have shown a likelihood of prevailing on their contention that the Crane Ordinance likely is impliedly preempted by the OSH Act to the extent that it establishes occupational safety or health standards for matters governed by the applicable OSHA regulations, 29 C.F.R. §§ 1926.550 and 1926.552, the Court must next determine whether, under Florida law, the provisions of the Ordinance that likely are preempted may be severed, and the remaining provisions of the Ordinance may be saved.  *See Nat'l Solid Wastes Mgmt. Ass'n v. Killian*, 918 F.2d 671, 684 n.18 (7th Cir. 1990), *aff'd sub nom. Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992).

     Severability of a local ordinance is a question of state law, and Florida law "clearly favors (where possible) severance of the invalid portions of a law from the valid ones."  *Coral Springs Street Sys, Inc. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004) (citations omitted).  The doctrine of severability "recognizes that federal courts have an affirmative duty to preserve the validity of legislative enactments when it is at all possible to do so."  *Id*. (quoting *Fla. Outdoor Adver., LLC v. City of Boynton Beach*, 182 F. Supp. 2d 1201, 1209 (S.D. Fla. 2001)).  The Florida Supreme Court has established the following test for determining whether the unconstitutional provisions of an ordinance may be severed:

> When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished indepndently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.

*Id*. (quoting *Smith v. Dep't of Ins.*, 507 U.S. 1080, 1089 (Fla. 1987)).  Applying Florida's severability test in this action, the Court is satisfied that the preempted provisions of the Crane Ordinance may be severed, and the remaining provisions of the Ordinance may be saved.

The provisions of the Crane Ordinance that likely are preempted may be separated from the remaining valid provisions without rendering the Ordinance meaningless, illogical, or grammatically nonsensical.  Removing the provisions that likely are preempted will defeat the Crane Ordinance's stated purpose of providing "a uniform standard for the construction, installation, operation and use of Hoisting Equipment [defined as mast climbing work platforms, tower cranes, mobile cranes and personnel and material hoists], for the inspection and certification of Hoisting Equipment, and for the education and certification of Hoisting Equipment operators."  (Crane Ordinance Section 1, §§ 8E-1(c) & 8E-2).)  However, saving the remaining provisions of the Ordinance that likely are not preempted by the OSH Act will serve to address the County's public safety concern posed by the substantial number of cranes and heavy hoisting equipment erected, installed and operated in the County during the hurricane season. Eliminating those provisions of the Ordinance that regulate occupational safety or health issues governed by the OSHA regulations will not destroy the regulatory purpose of the non-preempted provisions, which promulgate requirements for crane siting (Crane Ordinance Section 1, § 8E-9); for crane to crane communications (Crane Ordinance Section 1, § 8E-10(a)); and for hurricane preparedness of Hoisting Equipment (Crane Ordinance Section 1, § 8E-11).  *See Coral Springs Street Sys.*, 371 F.3d at 1348.  Moreover, the fact that the Crane Ordinance contains a severability provision, (Crane Ordinance Section 3), provides further support for the Court's finding that the County's "legislative desire is to keep as much of its ordinance as it can."  *Id*. at 1349

16

(recognizing Florida law that "[a]lbeit not binding, a legislatively expressed preference for the severability of voided provisions is persuasive" (quoting *Moreau v. Lewis*, 648 So. 2d 124, 127 (Fla. 1995)).  Accordingly, the Court finds that the provisions of the Crane Ordinance that likely are preempted by the OSH Act may be severed, and the remaining provisions of the Ordinance may be saved.

Severing the provisions of the Ordinance that likely are preempted because they establish safety or health standards for matters governed by the federal standards prescribed in 29 C.F.R. §§ 1926.550 and 1926.552, the remaining non-preempted provisions of the Ordinance, which do not regulate occupational safety or health matters for which a federal standards are in effect, are likely valid.  The provisions of the Ordinance that likely are valid, and non-preempted are as follows:

(1)     The Ordinance's "Whereas Clauses";

(2)     Section 1, § 8E-1(b)-(n);

(3)     Section 1, § 8E-2, except that the following language, contained in the first sentence, is stricken: "This chapter shall provide a uniform standard for the construction, installation, operation and use of Hoisting Equipment, for the inspection and certification of Hoisting Equipment, and for the education and certification of Hoisting Equipment operators."

(4)     Section 1, § 8E-7;

(5)     Section 1, § 8E-10(a);

(6)     Section 1, § 8E-11;

(7)     Section 1, § 8E-12;

(8)     Section 2, § 8CC-10, except that the following language is stricken: "Failure to

17

maintain or operate crane or heavy equipment in a safe condition in accordance with applicable standards."

(9)     Section 3;

(10)    Section 4; and

(11)    The first sentence of Section 5, reading: "This ordinance shall become effective ten (10) days after the date of enactment unless vetoed by the Mayor, and if vetoed, shall become effective only upon override by this Board."  The remaining language in Section 5 is stricken.

III.    The Applicable OSHA Regulations Likely  Do Not Constitute An Unlawful Delegation of Legislative Power to An Interested Private Party

During the hearing on Plaintiff's preliminary injunction motion, the County argued that the federal occupational safety and health standards prescribed in 29 C.F.R. §§ 1926.550 and 1926.552, which require compliance with the manufacturer's specifications and limitations applicable to the operation of all cranes and hoists—which all require compliance with DIN wind load standards—constitute an unlawful delegation of legislative power to an interested private party.  In support of this argument, the County cites *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936) and *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), two United States Supreme Court cases involving questions of whether provisions of the Bituminous Coal Conservation Act of 1935 (the "1935 Act") and the Bituminous Coal Act of 1937 (the "1937 Act"), respectively, were unconstitutional as unlawful delegations of legislative power.

In *Carter Coal*, the Court held that a provision of the 1935 Act, which delegated to majority producers and miners of coal the power to fix maximum hours of labor and minimum wages, was an unlawful delegation of legislative power.  *Carter Coal*, 298 U.S. at 310-11.  The

18

*Carter Coal* Court found that the effect of the provision, "in respect of wages and hours, [was] to subject the dissentient minority, either of producers or miners or both, to the will of the stated majority. . . ." *Id*. at 311.  The *Carter Coal* Court further explained:

> The power conferred upon the majority is, in effect, the power to regulate the affairs of an unwilling minority.  This is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons whose interests may be and often are adverse to the interests of others in the same business.

*Id*.  The Court distinguished between producing coal on the one hand, and regulating its production, on the other, and described the difference as "fundamental," because production is a private activity, whereas regulating production is "necessarily a governmental function, since, in the very nature of things, one person may not be intrusted with the power to regulate the business of another, and especially of a competitor."  *Id*.  The Court observed that "a statute which attempts to confer such power undertakes an intolerable and unconstitutional interference with personal liberty and private property."  *Id*.

In *Sunshine Anthracite Coal*, the Court found that a provision of the 1937 Act—which provided for the organization of member coal producers under the Bituminous Coal Code, and which empowered the National Bituminous Coal Commission to fix minimum prices for code members in accordance with stated standards—was not unconstitutional as an unlawful delegation of legislative power.  *Sunshine Anthracite Coal*, 310 U.S. at 387, 397.  The Court found that the standards Congress provided were sufficiently specific that "in the hands of experts the criteria which Congress has supplied are wholly adequate for carrying out the general policy and purposes of the Act."  *Id*. at 398.  The Court also noted that Congress had not delegated its legislative authority to the industry, observing that "members of the code function

19

subordinately to the Commission," and the Commission, not the code authorities, determined the prices and had authority and surveillance over the activities of these authorities.  Thus, the Court concluded, "[s]ince law-making is not entrusted to the industry, this statutory scheme [was] unquestionably valid."  *Id*. at 399.

In this action, the applicable OSHA regulations, 29 C.F.R. §§ 1926.550 and 1926.552, prescribe federal occupational safety and health standards which require compliance with the manufacturer's specifications and limitations applicable to the operation of all cranes and hoists. In turn, these manufacturer's specifications all require compliance with DIN wind load standards. The County argues that the incorporation of the manufacturer's specifications—and their concomitant incorporation of DIN wind load standards—within the occupational safety and health standards applicable to the operation of all cranes and hoists constitutes an unlawful delegation of legislative power to an interested private party because, in effect, the OSHA regulations allow manufacturers from all over the world to set the wind load standards applicable to cranes and hoists in Miami-Dade County.[6]  The Court disagrees.

OSHA's prescription of occupational safety and health standards which require compliance with the manufacturer's specifications applicable to the operation of cranes and hoists does not create a situation where a private person (or industry) is imposing a law upon others.  Rather, the standards contained in the OSHA regulations require compliance with the particular specifications applicable to particular cranes or hoists, which, in turn, require compliance with DIN wind load standards.  OSHA has not, by mandating compliance with

---

[6]The County argues that setting the wind load standards applicable to cranes and hoists is a traditional legislative power that cannot be delegated.

20

manufacturer's specifications, authorized crane and hoist manufacturers to establish any standards (e.g., design, construction, installation, operation, or wind load standards) for the industry.  Rather, OSHA has established standards which mandate conformance with the manufacturer's specifications for the operation of any given crane or hoist.  Accordingly, because law-making is not entrusted to the crane manufacturing and hoisting industry, the Court finds that OSHA's prescription of occupational safety and health standards which require compliance with the manufacturer's specifications applicable to the operation of cranes and hoists likely is valid, and does not constitute an unlawful delegation of legislative power.

IV.    Plaintiffs Have Met Their Burden of Showing That a Preliminary Injunction Should Issue

Plaintiffs have met their burden of showing that a preliminary injunction should issue.  In making this determination the Court finds that Plaintiffs have demonstrated that the following four requirements have been satisfied: (a) there is a substantial likelihood of prevailing on the merits; (b) there is a substantial threat of suffering irreparable injury if the injunction is not granted; (c) the threatened injury to Plaintiffs outweighs the threatened harm the injunction may cause Defendant; and (d) granting the preliminary injunction will serve the public interest.  *See Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516-17 (11th Cir. 1997).   The decision of whether to issue a preliminary injunction is firmly within the discretion of the trial court.  *See Virginian Ry. Co. v. System Fed'n, R.E.D.*, 300 U.S. 515, 551 (1937).

Based on the Court's finding that the Crane Ordinance likely is impliedly preempted by the OSH Act to the extent that it establishes occupational safety or health standards for matters governed by the federal standards prescribed in the applicable OSHA regulations, 29 C.F.R. §§

21

1926.550 and 1926.552, the Court finds that Plaintiffs have demonstrated that there is a substantial likelihood of prevailing on the merits.  Second, the Court finds that there is a substantial threat of suffering irreparable injury if the injunction is not granted insofar as Plaintiffs would have to conform to two separate regulatory schemes.  Moreover, Plaintiffs have presented evidence that their members cannot comply with the Crane Ordinance, and as a result, they will be precluded from working in the County.  (Pls.' Ex. 13 (Aff. of Danny J. Shaw ¶ 7); Pls.' Ex. 14 (Aff. of Leonard D. Mills ¶ 4); Pls.' Ex. 15 (Aff. of Bruce Whitten ¶ 7); Pls.' Ex. 16 (Aff. of John Siegle ¶¶ 6-7).)  Third, the Court finds that the threatened injury to Plaintiffs outweighs the threatened harm the injunction may cause the County because, as Plaintiffs point out in their motion, OSHA regulations governing the same health and safety matters regulated by the Ordinance are in effect, and granting preliminary injunctive relief will not lead to any new unregulated conduct.  Furthermore, the Court's finding that the provisions that likely are preempted may be severed and that the remaining provisions may be saved from preemption mitigates the potential harm that the injunction may cause the County.  Fourth, the Court finds that granting the preliminary injunction will serve the public interest because "the public may be deemed to have an overriding interest in assuring that the government remains within the limit of its constitutional authority." *Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993).  Accordingly,  it is hereby

ORDERED AND ADJUDGED that Plaintiffs' Emergency Motion for Preliminary Injunction is GRANTED in accordance with this Order.  The County is enjoined from enforcing the  provisions of the Crane Ordinance that likely are preempted by the OSH Act pending a resolution of the action on the merits.

DONE AND ORDERED in Chambers at Miami, Florida, this 22d day of May, 2008.

_Ursula Ungaro_

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of Record