# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-21274-CIV-UNGARO

ASSOCIATED BUILDERS AND
CONTRACTORS FLORIDA EAST
COAST CHAPTER, *et al*.,

_____Plaintiffs,

v.

MIAMI-DADE COUNTY,

_____Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiffs' Motion for Summary Judgment, filed

July 15, 2008 (D.E. 43).  Defendant responded in opposition and cross-motioned for summary

judgment on August 8, 2008 (D.E. 55), to which Plaintiff replied on August 21, 2008 (D.E. 62).

Defendant then replied in support of its Cross-Motion on September 2, 2008 (D.E. 63).  The

matters are ripe for disposition.

THE COURT has considered the motions and the pertinent portions of the record and is

otherwise fully advised in the premises.

## Background

Plaintiffs are four separate trade associations in the construction, crane and crane services

industries, and are non-profit corporations incorporated under the laws of the State of Florida.[1]

(Plaintiffs' Statement of Undisputed Facts (D.E. 43-2, "Pl's SOF") ¶ 1; County's Statement of

---

[1]      Plaintiffs are as follows: the Associated Builders and Contractors Florida East
Coast Chapter, Inc.; the South Florida Associated General Contractors of America, Inc.; the
Florida Crane Owners Council; and the Construction Association of South Florida.

Facts (D.E. 56, "County's SOF") ¶ 1.)  Defendant Miami-Dade County ("County") is a political

subdivision of the State of Florida.  (Pl's SOF ¶ 2; County's SOF ¶2.)

Plaintiffs filed suit against the County on May 1, 2008, seeking declaratory and injunctive

relief on the basis that the County's Crane Ordinance (defined below) is preempted by the

Occupational Safety and Health Act of 1970, 84 Stat. 1590, 29 U.S.C. § 651 *et seq*. ("OSH Act")

and the standards promulgated by the Occupational Safety and Health Administration ("OSHA").

Plaintiffs also alleged in their Complaint that the Crane Ordinance is unconstitutional because it

violates Plaintiffs' rights to procedural and substantive due process under the United States and

Florida Constitutions, and that the Crane Ordinance is unconstitutional under the dormant

commerce clause.

## A.    The Crane Ordinance

On March 28, 2008, the County enacted the Miami-Dade County Ordinance No. 08-34,

titled "Ordinance Relating to the Safety of Cranes and Other Hoisting Equipment; Providing for

Education and Certification of Operators; Establishing Standards for Hurricane Preparedness;

Providing for Enforcement; Creating Chapter 8E of the Code; Providing Severability, Inclusion

in the Code, and an Effective Date" (the "Crane Ordinance").  (Pl's SOF ¶ 3; County's SOF ¶ 3.)

The Crane Ordinance's "Whereas Clause" states that the County is "in the midst of an

unprecedented construction boom," that "more than 100 major projects under construction in [the

County] are utilizing heavy hoisting equipment such as tower cranes," that as a result there have

been an "increased number of tragic accidents and fatalities," and that according to statistics from

OSHA, there were fourteen construction fatalities in South Florida from January 2006 to May

2006, which is the approximate number of construction fatalities for the entire year of 2005.  The

Crane Ordinance's "Whereas Clause" further states that the County is exposed to "the onslaught of hurricanes of increasing frequency in recent seasons," and that the substantial number of cranes and heavy hoisting equipment in the County poses serious concerns of public safety during hurricane season; that other major metropolitan areas have local laws that govern crane operations and safety; that a Committee composed of equipment owners, manufacturers, operators and other members of the construction industry has served as an advisory board to the County's efforts to enhance safety regulations; and that the Committee has recommended the regulations contained in the Crane Ordinance "as necessary and desirable for the protection of public health and safety."

The stated purpose of the Crane Ordinance is to "provide a uniform standard for the construction, installation, operation and use of Hoisting Equipment,[2] for the inspection and certification of Hoisting Equipment, and for the education and certification of Hoisting Equipment operators." (Crane Ord. Sec. 1, § 8E-2.)

In particular, the Crane Ordinance sets forth standards for tower crane manufacture, installation, and use[3] (*id.* at § 8E-4); mobile crane manufacture, installation and use[4] (*id.* at § 8E-

---

[2]     "Hoisting Equipment" is defined as "mast climbing work platforms, tower cranes, mobile cranes and personnel and material hoists."  (Crane Ord. Sec. 1, § 8E-1(c).)

[3]     Specifically, with respect to the manufacture, installation, and use of tower cranes, the Ordinance provides that the following standards are applicable: (a) the equipment manufacturers (O.E.M.) specifications; (b) the mandatory rules contained within the applicable ASME B30 standard (ASME B30.3); (c) the most current applicable OSHA standards including 29 C.F.R. § 1926.550; and (d) the SEI/ASCE-7 wind load standards, which may be reduced at the discretion of the Building Official on a site-by-site basis. (Crane Ord. Sec. 1, § 8E-4.)

[4]     With respect to the manufacture, installation, and use of mobile cranes, the Ordinance provides that the applicable standards are (a) the O.E.M. specifications; (b) the mandatory rules contained within the applicable ASME standard (ASME B30.5); and (c) the

5); and personnel and material hoist manufacture, installation and use[5] (*id.* at § 8E-6).  The

standards set forth in the Crane Ordinance for the manufacture, installation and use of tower

cranes and personnel and material hoists include the wind load standards contained within

SEI/ASCE-7 for High Velocity Hurricane Zones as applied to the crane base foundation, the tie-

ins to the building, the free-standing height and the height above the top tie-in (for tower cranes)

and as applied to the hoist tie-ins and floor shoe connections (for hoists).[6]  (*Id.* at §§ 8E-4(d) &

8E-6-(d).)

The Crane Ordinance also promulgates (i) standards for tower crane and mobile crane

operator qualifications and certifications (*id.* at § 8E-9); (ii) signal person qualifications and

certifications (*id.* at § 8E-10(b)); and (iii) requirements for crane to crane communications (*id.* at

§ 8E-10(a).  In addition, the Crane Ordinance establishes requirements for crane siting (*id.* at §

8E-7), and requirements for building permits and inspections relating to construction involving

the placement, erection or use of Hoisting Equipment, including requirements for inspection

_____

most current OSHA standards applicable to cranes, including 29 C.F.R. §§ 1926.550 and
1910.80.  (Crane Ord. Sec. 1, § 8E-5.)

[5]     With respect to the manufacture, installation, and use of personnel and material
hoists, the Ordinance provides that the applicable standards are (a) the O.E.M. specifications; (b)
the mandatory rules contained within the applicable ANSI standard (ANSI A10.4); (c) the most
current OSHA standards applicable to hoists including 29 C.F.R. § 1926.552; and (d) the
SEI/ASCE-7 wind load standards, which may be reduced at the discretion of the Building
Official on a site-by-site basis.  (Crane Ord. Sec. 1, § 8E-6.)

[6]     The Ordinance further provides that in applying the provisions of SEI/ASCE-7 for
temporary installations, the design velocity reduction factors contained in SEI/ASCE 37-02 may
be considered in factoring the wind speed at the discretion of the Building Official, and that the
decision shall be made by the Building Official on a site-by-site basis.  (Crane Ord. Sec. 1, §§
8E-4(d) & 8E-6(d).)  The Building Official is to consider such factors as proximity to other
structures, density, swing radius of the crane, hoist location, and other safety requirements.  (*Id.*
at §§ 8E-4(d) & 8E-6(d).)

schedules, Hoisting Equipment inspection companies, and individual inspector qualifications and certifications (*id.* at § 8E-8).  The Crane Ordinance also sets forth requirements for hurricane preparedness of Hoisting Equipment (*id.* at § 8E-11.)

The Crane Ordinance authorizes the Miami-Dade County Building Code Compliance Office to enforce its provisions through the issuance of civil violations fines, and creates a right of action by the County for injunctive or other available relief where violations of the Ordinance involve damages to the public health and safety.  (*Id.* at § 8E-12 & Section 2, § 8CC-10.)  Finally, the Crane Ordinance contains a severability provision.  (*Id.* at Sec. 3).

The parties do not dispute the fact that the County did not submit a plan or receive approval from OSHA to enact the Crane Ordinance.  (Pl's SOF ¶¶ 4-5; County's SOF ¶¶ 4-5.)

**B.    OSHA Regulations**

OSHA has promulgated occupational safety and health standards that apply "to every employment and place of employment of every employee engaged in construction work."  29 C.F.R. § 1910.12(a).  These standards include general requirements for construction work involving cranes and derricks, 29 C.F.R. § 1926.550, and material hoists, personnel hoists, and elevators, 29 C.F.R. § 1926.552.   In particular, these two OSHA regulations (29 C.F.R. §§ 1926.550 and 1926.552) require compliance with the manufacturer's specifications and limitations applicable to the operation of all cranes, derricks, hoists, and elevators, and provide that where the manufacturer's specifications are not available, the limitations assigned to the equipment shall be based on the determinations of a qualified engineer competent in the field.  29 C.F.R. §§ 1926.550(a)(1) & 1926.552(a)(1).

Additionally, OSHA regulations set forth requirements for the inspection and certification

of crane and hoisting equipment, 29 C.F.R. §§ 1926.550(a)(5)-(6); 1926.550(b)(2);

1926.550(c)(5); 1926.552(c)(15) & 1926.552(c)(17); and the inspection of cranes by

incorporating the mandatory rules of the applicable American Society of Mechanical Engineers

("ASME") standard.  The OSHA regulations further establish standards for hand signals to crane

and derrick operators, 29 C.F.R. § 1926.550(a)(4), and standards for crane operator qualifications

and certifications by incorporating the mandatory rules of the applicable ASME standards.

**C.     The Preliminary Injunction and Dismissal of Counts III-V**

Shortly after filing their Complaint, Plaintiffs moved this Court for an emergency

preliminary injunction to enjoin the County from enforcing the Crane Ordinance.  (D.E. 8.)  After

conducting a hearing on the matter, the Court made certain findings of fact and conclusions of

law, and enjoined the County from enforcing only those provisions of the Crane Ordinance that

the Court deemed to be likely preempted by the OSH Act.[7]  (D.E. 27, the "Preliminary Injunction

Order".)  Additionally, the Court found that Plaintiffs' procedural and substantive due process

claims and dormant commerce clause claims (Counts III, IV, and V of Plaintiffs' Complaint)

were not ripe for review.  Accordingly, the Court granted in part the County's Motion to Dismiss

Plaintiffs' Complaint (D.E. 28), dismissing Counts III, IV, and V of Plaintiffs' Complaint.  (D.E.

29).[8]

Plaintiffs then filed their instant Motion to for Summary Judgment, wherein they request

_____

[7]      The Court's Preliminary Injunction Order was entered on May 22, 2008.  The
County has filed an interlocutory appeal of this Court's Preliminary Injunction Order.  (*See* D.E.
34.)  The County's motion to stay these proceedings and the preliminary injunction pending
appeal was denied.  (*See* D.E. 47.)

[8]      The Court's Order on the County's Motion to Dismiss was entered on June 3,
2008.

(i) that the Court permanently sever those portions of the Crane Ordinance found to be preempted by the OSH Act in its Preliminary Injunction Order, and (ii) that the County be permanently enjoined from enforcing those provisions.  The County then cross-motioned for summary judgment, wherein they seek to preserve their arguments previously raised in opposition to Plaintiffs' request for preliminary injunctive relief but primarily argue that Crane Ordinance's "hurricane wind load standard provisions"[9] fall outside the preemptive effect of the OSH Act. (*See* D.E. 55, n.1.)  The County maintains that these provisions in particular survive because (i) they are not "occupational regulations," as they are targeted at public safety rather than worker safety, and, (ii) to the extent that hurricane wind load standard provisions are considered "occupational regulations," there are no similar federal regulations in effect.  Accordingly, the County requests that the Court enter summary judgment in its favor and dissolve the preliminary injunction order to allow the County to enforce the provisions of its Crane Ordinance establishing the hurricane wind load standard.

## Legal Standard

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress*

---

[9]     Although the County does not specifically reference which provisions in the Crane Ordinance are the "hurricane wind load standard provisions," the Court assumes that the County's is referencing Sections 8E-4(d) and 8E-6(d) of the Crane Ordinance.

& *Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of

the pleadings; after the moving party has met its burden of proving that no genuine issue of

material fact exists, the non-moving party must make a sufficient showing to establish the

existence of an essential element to that party's case and on which that party will bear the burden

of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of*

*Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933

(11th Cir. 1989).

If the record presents factual issues, the court must not decide them; it must deny the

motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[10]

Summary judgment may be inappropriate even where the parties agree on the basic facts, but

disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec.*

*Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might

differ on the inferences arising from undisputed facts then the court should deny summary

judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026,

1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he

dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with

evidence unless and until the movant has properly supported the motion with sufficient evidence.

---

[10]     Decisions of the United States Court of Appeals for the Fifth Circuit entered
before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of*
*Prichard*, 661 F.2d 1206 (11th Cir. 1981).

*Adickes*, 398 U.S. at 160.  The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever.  *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967).  The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

<u>**Analysis**</u>

**A.      Preemption**

The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  U.S. Const. art VI, § 2.  Consistent with this command, the Supreme Court has "long recognized that state laws that conflict with federal law are 'without effect.'" *Altria Group v. Good*, 129 S.Ct. 538, 543 (2008) (citing *Maryland v. Louisiana,* 415 U.S. 725, 726 (1981)).

Congressional intent governs this Court's determination of whether the OSH Act and the regulations promulgated thereunder preempt the Crane Ordinance.  *See id.; Gade v. Nat'l Solid Waste Mgmt. Assoc.*, 505 U.S. 88, 96 (1992) (interpreting the preemptive effect of OSHA). Congress' preemptive intent may be indicated by the OSH Act's express language, or "inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law."  *Altria,* 129 S.Ct. At 543.

In the case, *Gade v. National Solid Waste Management Association,* the Supreme Court considered the preemptive scope of the OSH Act and held that "nonapproved state regulation of

9

occupational safety and health issues for which a federal standard is in effect is impliedly

preempted as in conflict with the full purposes of and objectives of the OSH Act."  505 U.S. at

98-99.  The Supreme Court reached this holding by inferring Congress' intent to preempt state

law through its enactment of § 18(b) of the OSH Act (codified at 29 U.S.C. § 667(b)), which

provides that a state "shall" submit a plan to OSHA if it wishes to "assume responsibility" for

"development and enforcement . . . of occupational safety or health issue with respect to which a

Federal standard has been promulgated."  *Id*. at 99.  Conversely, § 18(a) of the OSH Act saves

from preemption any state law regulating an occupational safety and health issue with respect to

which no federal standard is in effect.  29 U.S.C. § 667(a).  Thus, the preemption analysis for this

Court is (a) whether the Crane Ordinance is an occupational safety and health regulation and, if

yes, then (b) whether it is preempted under § 18(b) because there is already a federal standard

governing the same issue or, alternatively, whether the Crane Ordinance falls within the savings

clause of § 18(a).

> **(i)      The Crane Ordinance is an occupational safety and health regulation.**

An "occupational safety and health standard" is "a standard which requires conditions, or

the adoption or use of one or more practices, means, methods, operations, or processes,

employment."  29 U.S.C. § 652(8).  The Supreme Court made it clear in *Gade* that a state-

regulated standard will not be saved from preemption simply because it serves a dual purpose,

such as addressing public safety *and* occupational safety concerns.  505 U.S. at 104-05.  In other

words, a dual impact law - that which addresses public safety as well as occupational safety

concerns - that serves regulates an occupational safety or health issue for which a federal

standard is in effect is impliedly preempted as in conflict with the full purposes of and objectives

of the OSH Act.  *Id.* at 108.  The Court finds that the Crane Ordinance is such a dual impact law.

The County argues that the intent of the Crane Ordinance, "articulated in the whereas clauses, reveal[s] the County's concern with the area's construction boom, the number of cranes, hurricanes of increasing frequency and ferocity and the need to protect the public safety." (County's Response to Plaintiffs' Motion for Emergency Preliminary Injunction (D.E. 11, "County's Resp. to Prelim. Injunc.") at 11.)   More specifically, the Crane Ordinance's hurricane wind load standard is "meant to prevent the catastrophic collapse of a tower crane and hoisting equipment during hurricanes." (County's Cross-Mot. for SJ at 3.)  Thus, the County argues that the Crane Ordinance is directed at *public* safety, not worker safety because"[f]alling cranes kill people, workers and non workers alike" and because workers should not even be at the job site during hurricanes and other high wind events.  (*Id.*; *see also* County's Resp. to Prelim. Injunc. at 11.)  In other words, the County's position is that the Crane Ordinance (and specifically the hurricane wind load standard) has a singular purpose: to protect the general public, not workers on a construction site.

The Court is not persuaded by this argument.  The Court first notes that although the Crane Ordinance's professed purpose is to protect the public from cranes collapsing during hurricanes, the fourteen construction fatalities referenced in the Ordinance's "Whereas Clause" occurred between January 2006 and May 2006.   South Florida does not experience hurricanes during these months.  Moreover, the County has never identified a single crane incident resulting in an injury to a member of the general public (as opposed to a construction worker) that occurred during the hurricane months.  Thus, the Court finds the County's argument that the hurricane wind load standard is aimed solely at protecting the public and to "prevent the

11

catastrophic collapse of a tower crane and hoisting equipment during the hurricanes" seems to the Court to be disingenuous.

Further, this Court is not bound by the purpose of the Crane Ordinance as articulated in its "Whereas Clause", but "will determine for itself the *practical impact* of the law." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) (emphasis added) (cited in *Gade*, 505 U.S. at 106); *see also Gade*, 505 U.S. at 105 ("[W]e have refused to rely solely on the legislature's professed purpose and have looked as well to the effects of the law.") The practical impact of the Crane Ordinance is directly and most immediately felt by those who are in the business of operating cranes and hoisting equipment because the Ordinance regulates, *inter alia*, the crane and hoisting equipment installed on construction sites, the manner in which that equipment is used, when and by whom the sites and equipment are inspected, and the qualifications/certifications required for crane operators. The fact that the Crane Ordinance is "necessary and desirable for the protection of the public health and safety" does not diminish the fact that the Crane Ordinance is regulating the operation of hoisting equipment and, therefore, worker safety.[11]

The County argues that, at the very least, the Crane Ordinance's hurricane wind load standard should survive this Court's preemption analysis as a non-occupational safety standard

---

[11]     The Court also disagrees with the County's argument that the substantive provisions of the Crane Ordinance are akin to building code regulation because they concern structural requirements and, therefore, should not be deemed preempted as construction activities are traditionally governed by state law. (County's Resp. to Prelim Injunc. Mot. at 11-12.)  First, this argument wholly ignores Section 8E-9 of the Crane Ordinance, which creates tower crane and mobile crane operator qualifications and certifications.  This section is clearly regulating workers and not structures.  Second, the standards set forth in Sections 8E-4 through 8E-6 expressly apply to the installation *and use* of cranes and hoisting equipment.  In other words, these standards are regulating how workers may use the equipment in the course of their employment.  As such, the Court finds that the Crane Ordinance is an occupational health and safety regulation.

because there should not be any workers on a construction site during a hurricane. (County's Cross-Mot. for SJ at 5.) This factual argument, however, does not alter the Court's conclusion that the hurricane wind load standard is in effect an occupational safety and health standard. First, the Crane Ordinance's hurricane wind load standard serves to protect the workers' safety regardless of whether there are hurricane-force winds or not. (An ordinance that protects workers during 140 mph winds also protects workers during 70 mph winds.) Second, workers must comply with the hurricane wind load standard whenever installing or using a crane or other hoisting equipment (*see, e.g.,* Crane Ord. Sec. 1, § 8E-4 ("The following standards shall be applicable to tower cranes proposed to be *installed* and *used* within the . . . County"), and the standard applies regardless of whether the manufacturer's wind load standard is less stringent. In this way, the hurricane wind load standard is different from the Crane Ordinance's hurricane preparedness provision, which solely ensures that the appropriate precautions are taken to secure the work site during a hurricane for the benefit of the surrounding public. (*See* Crane Ordinance Sec. 8E-11.)

The Court is further convinced that the standards contained in the Crane Ordinance are occupational safety and health standards because they do not apply to workers solely as members of the general public. In *Gade,* the Supreme Court held that there are some state laws of "general applicability (such as laws regarding traffic safety or fire safety) . . . that may have a 'direct and substantial' effect on worker safety, [but] they cannot be fairly characterized as 'occupational' standards because they regulate workers simply as members of the general public." *Id.* at 107. Accordingly, such laws of general applicability would not be preempted under the OSH Act. Here, by contrast, the Crane Ordinance sets forth standards that specifically regulate only those in

the construction business operating cranes and other hoisting equipment.  Additionally, the

Ordinance sets standards for construction sites – areas that generally are not open to the public.

(*See* Crane Ord. Sec.1, §§ 8E-4, 8E-5, 8E-6.)   Thus, the Court finds that the Crane Ordinance is

not a law of general applicability, but rather a local that regulates both occupational safety and

health standards for those in the business of operating cranes and hoisting equipment and public

safety generally.

      In sum, the Court finds that the Crane Ordinance regulates workers, for their own safety

and the public's safety alike.  "That such a law may also have a nonoccupational impact does not

render it any less of an occupational standard for purposes of pre-emption analysis."  *Gade,* 505

U.S. at 107.  Thus, the Crane Ordinance is a dual purpose law that, for reasons stated more fully

below, the Court finds is preempted by the OSH Act.

      **(ii)     There is an applicable federal standard.**

      The Court now turns to the second part of the inquiry: Whether the Crane Ordinance is

preempted under § 18(b) of the OSH Act because it is a non-approved occupational standard and

there is currently a federal standard in effect.  The Court begins by noting that it is clear that the

OSH Act regulates cranes and hoisting equipment.  *See generally,* 29 C.F.R §§1926.550 &

1926.552.  It is also clear that the parties do not dispute the fact that the County did not submit a

plan or receive approval from OSHA to enact the Crane Ordinance.  (Pl's SOF ¶¶ 4-5; County's

SOF ¶¶ 4-5.)  The County argues, however, that there are no federal wind load standards for

tower cranes.  (*See* County's Resp. to Prelim. Inj. at 13; County's Cross-Mot. for SJ at 5.)

      As stated above, the relevant OSHA regulation for cranes requires all employers to

"comply with the manufacturer specifications and limitations applicable to the operation of any

and all cranes and derricks."[12]  29 C.F.R. § 1926.550.  In the event that a manufacturer's

specifications are unavailable, OSHA requires that the crane be used in accordance with the

limitations assigned to the equipment by a qualified engineer competent in the field.  *Id.*

Meanwhile, the Crane Ordinance requires tower cranes - regardless of the manufacturer's

specifications - to comply with the wind load standards in SEI/ACSE 7, or SEI/ACSE 7 in

conjunction with SEI/ASCE 37-02.  (Crane Ord. Sec. 1, §§ 8E-5 & 8E-6.)

The County argues that "[t]o conclude that the manufacturer's specifications or engineers

determine the wind load 'standard' for tower cranes is to conclude that there is no 'standard' . . .

[because] OSHA provides no uniform authority or approved model regarding tower crane wind

loads."  (County's Cross-Mot. for SJ at 8.)  The County fails to cite, however, a single case

standing for the proposition that a federal standard must consist of a "uniform authority or

approved model," and the Court refuses to create such a requirement.  A plain reading of 29

C.F.R. § 1926.550 is that the federal "standard" is that employers must comply with the

manufacturer's specifications or the limitations set forth by an expert in the field if there are

none.  The simple fact that OSHA can enforce 29 C.F.R. § 1926.550 shows that a standard

exists.[13]

_____

[12]     This same requirement is imposed on employers operating hoists and elevators.
*See* 29 C.F.R. § 1926.552.

[13]     Because the Court does not interpret the OSH Act or *Gade* to require a "uniform"
federal standard in order to find preemption, the Court is not persuaded by the County's proffer
of Mr. Iglesias's sworn testimony that reliance on manufacturer's specifications to determine
wind load standards for tower cranes provides no uniformity because the DIN standard is not the
only wind load standard.  (County's Cross-Mot. for SJ at 8.)  Similarly, the Court is not
persuaded by County's reference to the testimony of expert witness, Lawrence Ken Shapiro, who
stated during the preliminary injunction hearing that "[t]here's no *explicit* federal wind load
standard that I am aware of."  (County's Cross-Mot. for SJ at 5 (emphasis added).)  Mr. Shapiro

In its Cross-Motion for Summary Judgment, the County makes much of the fact that Plaintiff submitted an affidavit from Mr. Adam Cote, which stated that "[a]ll manufacturer specifications for tower cranes used in the United States require the crane to comply with the DIN or the European Standard for wind loads." (Pl.'s Preliminary Inj. Hr'g, Ex. 17.) [14]  The County argues that this assertion is wrong because Mr. Cote has since stated in a deposition that he does not know "for an absolute fact" that all tower cranes in the United States utilize the DIN standard.  (County's Cross-Mot. at 6.)[15]  Additionally, the County proffers the declaration of Mr. Peter Iglesias, which states that he has knowledge of many different crane manufacturers that adhere to different standards other than the DIN standard, to support its argument that there is no federal standard.  (See Iglesias Dec. ¶ 8 (D.E. 57-2).)  The Court, however, finds the fact that manufacturers may utilize different wind load standards irrelevant.  Regardless of the number of standards utilized by manufacturers, there remains a single standard for OSHA compliance:  29 C.F.R. § 1926.550, which in turn incorporates manufacturer specifications and expert limitations.

---

did not state that there was no standard, only that it was not explicit.  In other words, the federal standard *is* that employers must comply with the manufacturer's specifications or expert's recommendation.  The federal standard does not need to be as explicit as the wind load standards contained in the Crane Ordinance in order to exist.

   Further, the County's reference to Mr. Iglesias's testimony that reliance on manufacturer's specifications may be insufficient to determine a crane's structural sufficiency is irrelevant to whether there is a federal standard in place.  In fact, such testimony only supports the Court's reading of the OSHA regulation as creating a federal standard.  If no such standard existed, then there would be nothing for Mr. Iglesias to evaluate and find insufficient.

[14] "DIN" is an acronym for Deutsche Industrie Norm, German Industrial Standard. These standard requires cranes to comply with a wind load of 93 mph.  (Cote Affidavit, ¶ 8.)

[15] Indeed, Mr. Cote's deposition testimony was that all the manufacturer's specifications that he has seen utilize the DIN standard.  (Deposition Tr. Adam Cote (D.E. 57-3) 24:12-19, July 9, 2008).

The County is seeking to supplement OSHA regulations by enforcing its own wind load standard, and, as *Gade* makes clear, Congress intended to avoid subjecting workers and employers to duplicative regulation when enacting the OSH Act.  *Gade*, 505 U.S. at 100.  If the Court were to allow the Crane Ordinance to stand in its entirety, then it would subject employers to duplicative regulation because, for instance, they would have to comply with 29 C.F.R. § 1926.550 *and* the Ordinance's wind load provisions.  Therefore, while the Court can appreciate the County's desire to tailor code provisions pertaining to the installation and operation of cranes to better suit the particular climate concerns of South Florida, the County may not supplement or replace 29 C.F.R. § 1926.550 without first obtaining prior approval of the Secretary of Labor, as described in § 18(b) of the OSH Act.  *Id.* ("[A] State may develop an occupational safety and health program tailored to its own needs, but only if it is willing to completely displace the applicable federal regulations.")

## B.    Unlawful Delegation

The County argues that the federal occupational safety and health standards prescribed in 29 C.F.R. §§ 1926.550 and 1926.552 constitute an unlawful delegation of legislative power to an interested private party.  (County's Cross-Mot. for SJ at 8-9.)[16]  As the County recognizes, at least one court has considered whether 29 C.F.R. § 1926.550(a)(1) (the "Crane Load Limit Regulation") illegally delegates the duty to set standards to private parties.  In *Towne*

---

[16]    The County also made this argument at the preliminary injunction hearing, citing *Carter v. Carter Coal Co.,* 298 U.S. 238 (1936) and *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), two United States Supreme Court cases involving question of whether the provisions of the Bituminous Coal Conservation Act of 1935 and the Bituminous Coal of 1937, respectively, were unconstitutional as unlawful delegations of legislative power.  The Court addressed these two decisions at length in its Preliminary Injunction Order and incorporates the conclusions of law contained therein into its present Order.

17

*Constructions Co. v. Occupational Safety & Health Review Commission,* the Sixth Circuit

rejected an employer's argument that the Crane Load Limit Regulation was an unlawful

delegation of OSHA's rule-making authority.  847 F.2d 1187 (6th Cir. 1988).  The court found,

among other things, that the requirement that employers comply with manufacturer's load limits

is not an unlawful delegation because manufacturer's limits reflect the "national consensus

standard" that Congress authorized the Secretary to adopt under 29 U.S.C. § 655(a).[17]  *Id.* at

1189.

This Court is similarly unpersuaded that the Crane Load Limit Regulation is an unlawful

delegation.  OSHA prescribes an occupational safety and health standard that mandates

compliance with manufacturer specifications; manufacturers have not been entrusted with any

law-making authority.  Adopting manufacturer specifications indicates a reliance on private

expertise but does not amount to actual privatization of the lawmaking function.  *Royal Ins. Co.*

*v. RU-VAL Elec. Corp.*, 918 F.Supp. 647, 654 (E.D.N.Y. 1996) (finding that city did not

unconstitutionally delegate its legislative power by incorporating private standards into a

municipal ordinance); *see also Associated Homebuilders & Contractors v. Brock*, 862 F.2d 63

(3d Cir. 1988) (rejecting petitioner's unlawful delegation argument where the court previously

found that OSHA need not itself evaluate the specific hazards of certain chemicals but could rely

on the information developed by chemical manufacturers).  As the Sixth Circuit in *Towne* stated:

---

[17]      Section 655(a) provides in pertinent part:
Without regard to chapter 5 of Title 5 or to the other subsections of this section, the
Secretary shall . . . by rule promulgate as an occupational safety or health standard
any national consensus standard, and any established Federal standard, unless he
determines that the promulgation of such a standard would not result in improved
safety or health for specifically designated employees.
29 U.S.C. § 655(a).

> The physical impossibility of requiring OSHA [to] independently to set safety standards for every industry job classification and industrial substance in the country adequately explains and justifies Congress' decision to allow the Secretary to adopt the fruits of private efforts as governmental standards. The particular standards involved here are substantively fair; nor do they benefit the groups that created the standards at the expense of the petitioner. We find no conflict of interest or anticompetitive aspect to this delegation. There is no constitutional violation.

847 F.2d at 1190. Like the Sixth Circuit, this Court finds nothing in the instant record to show that incorporating manufacturer specifications is substantively unfair, or that it benefits a particular group at the expense of the employer, or that it creates any conflict of interest or anticompetitive effect. The Court is also unpersuaded that reference to manufacturer specifications is a delegation of law-making authority to the crane manufacturing and hoisting industry. Accordingly, the Court finds that OSHA regulations 29 C.F.R §§1926.550 & 1926.552 are valid and constitutional.

**C.      Severability**

The Court found in its Preliminary Injunction Order that, under Florida law, the non-preempted provisions of the Crane Ordinance may be saved.[18] As neither party appears to dispute this conclusion of law, the Court summarily restates its previous holding that the non-preempted provisions of the Crane Ordinance are as follows:

(1)      The Crane Ordinance's "Whereas Clauses";

(2)      Section 1, § 8E-1(b)-(h);[19]

---

[18]      The Crane Ordinance contains a severability provision. (*See* Crane Ord. Sec. 3.)

[19]      The Court notes that its Preliminary Injunction Order stated "Section 1, § 8E-1(b)-**(n)**." However, this was a clerical error, as Section 1 § 8E-1 contains only subsections (a) through (h).

(3)      Section 1, § 8E-2, except that the following language, contained in the first

sentence, is stricken: "This chapter shall provide a uniform standard for the construction,

installation, operation and use of Hoisting Equipment, for the inspection and certification of

Hoisting Equipment, and for the education and certification of Hoisting Equipment operators."

(4)      Section 1, § 8E-7;

(5)      Section 1, § 8E-10(a);

(6)      Section 1, § 8E-11;

(7)      Section 1, § 8E-12;

(8)      Section 2, § 8CC-10, except that the following language is stricken: "Failure to

maintain or operate crane or heavy equipment in a safe condition in accordance with applicable

standards."

(9)      Section 3;

(10)     Section 4; and

(11)     The first sentence of Section 5, reading: "This ordinance shall become effective

ten (10) days after the date of enactment unless vetoed by the Mayor, and if vetoed, shall become

effective only upon override by this Board."  The remaining language in Section 5 is stricken.

<u>**Conclusion**</u>

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment (D.E. 43)

is GRANTED.  It is further,

ORDERED AND ADJUDGED that Defendant's Cross-Motion for Summary Judgment

(D.E. 55) is DENIED.  It is further,

ORDERED AND ADJUDGED that Defendant's Request for Oral Argument (D.E. 58) is

DENIED AS MOOT.  It is further,

DONE AND ORDERED in Chambers at Miami, Florida, this 14th day of January, 2009.

_____

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of Record